# Aetna Ins. Co., *et al. v.* Hann, *et al.*

### Bill to Enjoin Actions at Law.

(Decided June 1, 1916.  72 South. 48.)

1. **Subrogation; Surety; Right.**—A legal subrogation, as distinguished from conventional or contractual subrogation, does not arise until the surety has paid or offered to pay the debt for which the principal is liable to protect his own rights or interest.

2. **Same; Conventional or Contractual.**—Conventional or contractual subrogation rests upon an express contract to that effect.

3. **Same; Nature and Theory.**—Subrogation is a substitution of one creditor for another, a means whereby the equity of one debtor is worked out through the legal right of the creditor so as to force the final payment of the debt out of him or those who are primarily liable therefor, and whereby one of several debtors who pays the debt is made a creditor in lieu of the original creditor against other debtors who have not paid, to the amount paid.

4. **Same; Insurer; Action Against Party Primarily Liable.**—A bill by several insurance companies to enjoin the prosecution of several actions at law by the insured on their policy, which shows that insured has not received anything from either of the parties primarily liable, or from the insurer secondarily liable, and that he had recovered against the party primarily liable, whose appeal was then pending, but which does not show that such action was collusive or fraudulent as to the insurer because not first proceeding against the insurer, and then allowing the insurer to sue the party primarily liable in the name of the insured, did not show any right in the insurer to subrogation to the rights of the insured against the parties primarily liable.

5. **Estoppel; Inconsistent Position.**—In such a case the insured was not estopped from suing on his policies because he had sued a third party for negligence in allowing her wall to fall upon his property and destroy it, as there was no inconsistency in charging such third party with negligence in constructing her wall, and in alleging that insured's property burned while covered by the policy sued on.

6. **Judgment; Estoppel; Requisite.**—A party is not permitted in a subsequent suit to take a position conflicting with that taken by him in a former suit if such position is to the prejudice of the adverse party, but for such an estoppel to be relied upon the parties and subject matter must be the same, the point must be directly in person, and the judgment must be rendered on that point.

7. **Same; Mutuality.**—Estoppels by judgment operate mutually, and a party not bound by a judgment cannot set up that another is estopped by it.

8. **Insurance; Estoppel.**—Where a party whose property was destroyed by the negligence of a third party in constructing a wall which fell upon his property, has recovered against such third party, his recovery diminishes

his loss pro tanto, and his right to recover against insurer would be limited of the remainder only of the loss covered by the policy.

9. **Same; Subrogation.**—In such a case the insured, receiving the whole loss from the insurer, would hold his claim against such third party in trust for the insurer, and might sue therefor in his own name for its use, or the insurer might sue in its own name for its own use.

10. **Same; Parties Secondarily Liable.**—Before subrogation could be decreed in favor of an insurer as against one primarily liable for the loss, the insurer must have paid the insured his loss according to his policy, and thus satisfied the insured's demand against the wrongdoer.

11. **Injunction; Actions at Law; Ground.**—Where the bill was by a number of insurance companies to enjoin the insured from his prosecution of several actions at law on his policy, pending the appeal of a judgment of one primarily liable for the loss, it was not maintainable on the theory that it would prevent a multiplicity of suits, as there was but one suit against each insurer; and the fact that each of the policies provided for the apportionment of the loss among the several insurers did not constitute such a community of interests in such a matter as to give the bill equity on the ground of preventing a multiplicity of suits.

12. **Equity; Ground; Multiplicity of Suits.**—In order for a bill filed on the sole ground of preventing a multiplicity of suits to contain equity, it must show a community of interests in the subject matter of the several suits in which the several litigants are interested and a mere community of interests in the questions of law or fact involved is not sufficient.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by the Aetna Insurance Company against C. A. Hann and others to enjoin several actions at law. From a decree sustaining demurrers to the bill complainants appeal. Affirmed.

COLEMAN & COLEMAN, for appellant.  PERCY, BENNERS & BURR, for appellee.

MAYFIELD, J.—Appellees brought separate actions against each of appellants on separate fire insurance policies. Appellants joined in a suit in equity against appellees to enjoin the prosecution of the several actions at law by appellees against them on the insurance policies.

The asserted equity was claimed to be based upon the fact that prior to the actions at law against appellants the appellees had brought an action in the federal District Court against a third party, one Mrs. Hudgins, to recover damages for injury to, or destruction of, the property insured by appellants, and had recovered a judgment for several thousand dollars against Mrs. Hudgins, who had appealed to the Circuit Court of Appeals to

have such judgment reversed, and that the case was still pending on appeal.

The chancellor sustained a demurrer to the bill, holding that the bill was without equity. From that decree complainants prosecute this appeal. The theory upon which complaints insist that their bill has equity rests upon four propositions, which are well stated by counsel for appellants in his brief. They are as follows:

"(1) The loss having been caused by the tort of Mrs. Lucy P. Hudgins, the complainants were entitled to be subrogated to the rights of the said C. Hann against Mrs. Lucy P. Hudgins. The said right having been defeated by the rendition of the judgment in the United States District Court, the cause of action against the insurance companies was thereby destroyed.

"(2) That the remedy at law was not a complete and adequate remedy.

"(3) That the said C. Hann, having asserted a claim against Mrs. Lucy P. Hudgins for damages which were the direct and proximate consequence of her negligence, and having been benefited by said claim, should in equity and good conscience be estopped from asserting the inconsistent claim against the insurance companies that the damage was a direct and proximate consequence of fire.

"(4) That equity should take cognizance of the cause, to prevent the multiplicity of suits."

In short, appellants claim that the equity of the bill depends: (1) upon the doctrine of subrogation; (2) of estoppel; and (3) of prevention of multiplicity of suits.

(1, 2) The doctrine of subrogation fails, for the reason that the right does not arise until the surety has either paid or offered to pay the debt or demand for which the principal is liable. Subrogation is either legal—that is, given by law—or arises out of convention or contract. A legal subrogation, such as is claimed here is allowed only when one in the situation of surety advances or pays money or thing of value to protect his own interests or rights; conventional or contractual subrogation rests upon an express contract to that effect.—*Bank v. Thompson,* 61 N. J. Eq. 188, 48 Atl. 333.

(3) Subrogation is a substitution of one creditor for another. One of several debtors who pays the debt is under the doctrine made a creditor, in lieu of the original creditor, to the

amount paid, against other debtors who have not paid. A debtor, however, cannot transpose himself into a creditor until he has paid the debt or demand or put the payee in default or wrong in not accepting or receiving payment from him. Subrogation is thus a means by which the equity of one debtor is worked out through the legal rights of the creditor. It is a mode which equity originated and works out to force the final payment of the debt by him or those who are primarily liable therefor. This court has defined it as follows: "In *Houston v. Br. Bk.*, 25 Ala. 257, it is defined as 'the substitution of a new for an old creditor,' or, in its more general sense, "the act of putting by transfer, a person in the place of another, or a thing in the place of another thing.' By this transfer 'the new creditor is subrogated to all the rights of the original creditor.' The principle upon which the whole doctrine of subrogation not only as it is applied for the protection of sureties but as it is applied to compel him who is primarily liable or the thing which may be primarily liable to bear a burthen, to continue to bear it for the relief of him, or another thing, secondarily liable, does not depend upon contract, but has its foundation in natural justice, and is said by Chancellor Kent to be 'recognized in every cultivated system of jurisprudence.' "—*Knighton, et al. v. Curry, et al.*, 62 Ala. 404, 408.

"A surety is not entitled to subrogation until payment of the debt for which he is liable.—Brandt on Suretyship, § 261; 2 Lead. Eq. Cases. 278. But whatever discharges the principal from liability to the common creditor, and is by him accepted as a payment, will operate in favor of the surety as a payment. It is not essential that the surety should have paid money; whatever the creditor accepts as an equivalent and in satisfaction will operate as a payment."—62 Ala. 413.

(4) Here the bill shows that the common creditor, Hann, has not yet received a cent from either the principal debtor or the surety. He has had to resort to the courts, as he had a right to do, against both principal and surety; both resist payment, and deny liability. There is no claim here that the creditor, Hann, has released or proposes to release the primary debtor; he is proceeding in a lawful manner to compel payment. There is no intimation that the action against the principal is collusive or fraudulent so far as the surety is concerned. It is singular that a surety should object or complain because the creditor first tries to make

the principal debtor pay the debt or demand which the surety may ultimately have to pay. If the subrogation were conventional or contractual, instead of legal, the surety could compel the creditor to do what the bill shows he has voluntarily done, and of which the surety is complaining. It would certainly be very inequitable to substitute the insurance companies to the rights of the insured, against a wrongdoer, until the insurance companies pay or offer to pay the debt they contracted to pay, or until the insured has done some act of omission or commission which puts the insurance companies at a disadvantage. For the insured to voluntarily attempt, in good faith, to make the wrongdoer pay for the destruction of the property, instead of first proceeding against the insurance companies, and, after collecting from them, then allowing the insurance companies to sue the wrongdoer in the name of the insured, certainly does not appear to be the doing of a wrong to the insurance companies, but appears to us to be to their advantage, unless there be some collusion or fraud in the suit against the wrongdoer. We are, of course, treating the case only on the allegations of the bill. We do not mean to now decide that the relation of principal and surety exists in law and in fact, between appellants and Mrs. Hudgins. For the sake of the decision on demurrer we are conceding that the relation exists.

(5) The contention that appellee Hann, the insured, is estopped from suing appellants on their contracts of insurance solely by reason of the fact that he has sued Mrs. Hudgins for negligence in allowing her wall to fall upon plaintiff's property and destroy it is wholly untenable. There is no inconsistency whatever in charging that Mrs. Hudgins was guilty of negligence in constructing or maintaining a wall which fell upon and injured plaintiff's house and goods, and in alleging that plaintiff's house and goods were burned, and were therefore within the protection of the insurance policies or contracts sued upon. Both allegations may very well be true. The remedies are not at all inconsistent.

It is very true that a party is not allowed in a subsequent suit to take a position in conflict with a position taken by him in a former suit, if the latter position is to the prejudice of the adverse party, and the parties and the questions involved in the two suits are the same; but it was never supposed that the rule applied to suits or actions in which the parties and the issues

[Aetna Ins. Co., et al. v. Hann, et al.]

were not the same in the two proceedings.—10 Ruling Case Law, p. 702, and cases cited; *Boyett v. Standard Co.,* 146 Ala. 554, 41 South. 756; *Reynolds v. Roebuck,* 37 Ala. 408; Herman on Estoppel, 408. In order for an estoppel of the kind here relied upon to be applicable and effective, the parties must be the same, the subject-matter the same, the point must be directly in question, and the judgment must be rendered on that point. Any of these ingredients wanting, the defense fails. The sentence quoted above has been adopted by both text-writers and judicial tribunals, and has come to be recognized as a judicial axiom.—*Hall & Farley v. Ala. Terminal Co.,* 173 Ala. 405, 56 South. 235.

(7) Estoppels by judgment operate mutually, and a party not bound by a judgment cannot claim that another is estopped by it. —*Gwynn v. Hamilton,* 29 Ala. 236. The bill in this case shows the parties to be different, and the questions upon which the decision or judgment must rest to be different. Appellants, of course, are not bound by the judgment rendered against Mrs. Hudgins; they are strangers to it. The only possible interest they can have in it is the conditional one, that if Hann collects anything from Mrs. Hudgins for the destruction of, or injury to, the property insured, to which appellants might be subrogated, when they have paid Hann they must recover it of Hann, or, if Hann receives such funds from Mrs. Hudgins before judgment against the insurance companies, this would be availing to them as a defense in a court of law by way of set-off or recoupment. So there can be no equity in the bill on the ground of estoppel.

(8, 9) To state appellants' case most strongly for them is to say that Mrs. Hudgins is liable to Hann as principal, and appellants are liable as sureties; that is, Mrs. Hudgins' liability is primary, and the insurance companies', secondary. This liability, however, is not in the order of time, but in the order of ultimate liability. So far as the order of time is concerned, Hann may first apply to whichever parties he pleases. If, however, he first applies to Mrs. Hudgins, and she pays voluntarily, or at the end of a suit, he thereby diminished his loss pro tanto, and his right to recover against the appellants is limited to the remainder only of his loss covered by the insurance contracts. If he first applies to the insurance companies, and they pay the whole loss voluntarily or at the end of a suit, he then holds the claim against Mrs. Hudgins in trust, for the insurance companies. He may sue therefor in his own name, for the use of the insurance com-

panies, or the insurance companies may sue in his name for his own use.—*Hart v. Western Railway*, 13 Metc. (Mass.) 99, 46 Am. Dec. 719; *Hall v. Railroad Co.*, 13 Wall. 370, 20 L. Ed. 594; *Mobile Co. v. Jurey*, 111 U. S. 584, 4 Sup. Ct. 566, 28 L. Ed. 527; *Southern Railway Co. v. Stonewall*, 163 Ala. 161, 50 South. 940.

(10) Before subrogation or substitution can be decreed, or the right thereto declared to exist, the insurer must have paid the insured his loss according to the contract. The latter's demand against the wrongdoer must be satisfied so as to relieve him of trouble and risk; and it is this securing of satisfaction by the insured which gives the insurer the right to be subrogated to the rights of the insured against the wrongdoer which negligently destroyed the property.

(11, 12) There is no equity in the bill on the theory that it will prevent a multiplicity of suits. Counsel for appellants concedes that this court is irrevocably committed to the doctrine that, in order for a bill to contain equity on the sole ground of preventing a multiplicity of suits, it must show a community of interest in the subject-matter of the several suits in which the several litigants are interested; that a mere community of interest in the questions of law or of fact involved is not sufficient. The mere fact that one suit in equity can be made a substitute for several actions at law is not sufficient to give equity jurisdiction for this purpose. The one suit in equity may be attended with more inconvenience, cost, and expense than the several at law.—*Roanoke Guano Co. v. Sanders*, 173 Ala. 359, 56 South. 198, 35 L. R. A. (N. S.) 491; *Southern Steel Co. v. Hopkins*, 174 Ala. 465, 57 South. 11, 40 L. R. A. (N. S.) 464, Ann. Cas. 1914B, 692; *Hamilton v. Alabama Power Co.*, 195 Ala. 438, 70 South. 737. Counsel for appellants, however, does insist that this bill shows a community of interest in the subject-matter of each of the several suits. The only community of interest shown in the subject-matter is possibly in the suit of Hann against Mrs. Hudgins; and we have shown that this gives the appellants no standing in this court at this time. It will be time to consider that when Hann has collected the judgment or received something from it.

The fact that each of the insurance policies contains the usual clause providing for the apportionment of the loss among the several insurers of the property destroyed in the proportion of the amount insured by each to the total insurance does not con-

[McKenzie v. Stewart, et al.]

stitute such a community of interest in the subject-matter as to give a bill equity to prevent a multiplicity of suits. This has been held by a great number of courts and a great number of times. See *Mech. Ins. Co., et al. v. Hoover Distillery Co.,* 173 Fed. 888, 97 C. C. A. 400, 32 L. R. A. (N. S.) 940 et seq., and note thereto, which collects many of the decisions. In all of the cases in which equity has taken jurisdiction on account of such provisions in insurance policies on the same property it was at the suit of the insured, to prevent his having to bring many suits, and not at the suit of the insurance companies.

There is but one suit against each of these companies yet brought or threatened by the insured, and he has not requested the insurance companies to relieve him of the trouble and expense of suing each severally. So if any equity could exist for this purpose, it would be at the suit of appellee Hann, and not at that of the appellant insurance companies. There is no possibility of many suits against either of them.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.