**JOHNSON v. PULLMAN CO.**

No. 14132.

United States Court of Appeals
Fifth Circuit.

Dec. 29, 1952.

Rehearing Denied Jan. 21, 1953.

John C. Godbold and Truman Hobbs, Montgomery, Ala., for appellant.

Marion Rushton, Montgomery, Ala., for appellee.

Before HUTCHESON, Chief Judge, and BORAH, and STRUM, Circuit Judges.

BORAH, Circuit Judge.

This appeal by Mrs. Willie B. Johnson is from an order which was entered in the court below granting a summary judgment in favor of the defendant Pullman Company. The defendant contended successfully in the trial court and is contending here that Mrs. Johnson is estopped from proceeding in this suit by a judgment rendered against her in a suit which she had previously brought in the Circuit Court of Montgomery County, Alabama, against the Louisville and Nashville Railroad Compa-

ny.[1] The appellant insists that the present case does not come within the rule of estoppel by judgment and points out that Pullman has made no claim that it was in privity with the railroad company in the state action, was not a defendant therein, and would not have been bound in the event a judgment had been entered in her favor.

■ The suit in the state court was predicated in great measure upon the claimed negligence of Pullman's employees. Appellant there alleged that the railroad company negligently caused or permitted her husband[2] to alight from the train at a dangerous and unsafe place, but her case was tried on the theory that the employees of Pullman had acted as the servants of the railroad in respect to the specifications of negligence alleged.[3] At the close of the evidence, counsel for the appellant requested and obtained the following charge to the jury:

"The Court charges the Jury that the servants of a sleeping car company or pullman car company must be regarded as the servants of the railway company of whose train the car is a part in all matters pertaining to the safety of passengers whom it undertakes to carry over its line, and the railroad company is liable for all damage to passengers proximately resulting from their negligence."

The crucial question here is whether the prior case as constructed by the appellant and the resulting judgment absolving the railroad from liability, operates in the present suit as an estoppel by judgment.

Appellant, citing Aetna Insurance Co. v. Hann, 196 Ala. 234, 72 So. 48, invokes the generally accepted rule that estoppel by judgment operates mutually and only in respect to those who were actual parties to the litigation or their privies.[4] Pullman,

1. The record in this state case was included in, and furnished the basis for the motion for summary judgment.

2. The appellant is the widow of Jesse Lee Johnson, Jr. She was awarded workmen's compensation and thereafter brought suit against the railroad under Title 26, Section 312, of the Code of Alabama of 1940, a part of the Alabama Workmen's Compensation Law providing a remedy over against third parties legally liable for wrongful death. Pullman contends that because the Alabama Homicide Act, Title 7, Section 123, of the Code of Alabama of 1940, provides for only one recovery for a wrongful death, the appellant may not now bring a second suit. However, this contention is patently without merit, as a recovery has not been had by her against a third party, and under the last-mentioned statute, the mere adverse determination of a suit against the railroad would not bar the present proceeding. See Bell v. Riley Bus Lines, 257 Ala. 120, 57 So.2d 612.

3. There was evidence which tended to establish the following: that Johnson was struck by a freight train and killed in the yard of the Louisville and Nashville Railroad at Flomaton, Alabama, after he had left a Pullman car on which he had been a passenger; that when the

train on which Johnson was riding stopped at Flomaton, his point of destination, Johnson was fast asleep in the men's room of a Pullman car other than the one on which he and his traveling companions, Ward and Turberville, had purchased berths. That Ward and Turberville experienced difficulty in finding Johnson when the time came for the three to leave the train, and that when Ward finally located Johnson and aroused him the train was in motion and was being switched through the yard; that Ward instructed a Pullman porter to see that Johnson got off the train; that Ward then left the moving train, and, shortly thereafter, Johnson put on his coat and shoes, went out of the men's room, and this was the last time he was seen alive.

4. Privity, as used when dealing with the estoppel of a judgment, denotes mutual or successive relationship to the same right of property, and while there is some diversity of opinion as to whether the estoppel can be expanded so as to include joint tort-feasors not parties, the sounder reason, as well as the weight of authority, is that the failure to recover against one of two joint tort-feasors is not a bar to a suit against the other upon the same facts. Bigelow v. Old Dominion M. & S. Co., 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009.

on the other hand, claims that it comes within the exception to the general rule of mutuality of estoppel which applies in cases where the relation between the respective defendants in the two suits is that of principal and agent or master and servant and where the liability of the defendant in the second suit is altogether dependent upon the culpability of its principal or agent, master or servant, which was exonerated in the prior suit upon the same facts, when sued by the same plaintiff. This exception, as stated in Portland Gold Mining Co. v. Stratton's Independence, 10 Cir., 158 F. 63, 69, 16 L.R.A.,N.S., 677, is based upon the principle that "when the plaintiff has litigated directly with the immediate actor the claim that he was culpable, and, upon the full opportunity thus afforded for its legal investigation, the claim has been adjudged against the plaintiff, there is manifest propriety, and no injustice, in holding that he is thereby concluded from making it the basis of a right of recovery from another who is not otherwise responsible". See Interstate Electric Co. v. Fidelity & Deposit Co. of Maryland, 228 Ala. 210, 153 So. 427; Griffin v. Bozeman, 234 Ala. 136, 173 So. 857; Great A. & P. Tea Co. v. Traylor, 239 Ala. 497, 195 So. 724. Pullman contends that inasmuch as its employees or agents were exonerated in the prior suit, it is immune from suit herein. It further contends that it was in effect the agent of the railroad, and that the instruction given to the jury in the prior suit that the Pullman employees acted as servants of the railroad necessarily encompassed any and all acts of the Pullman Company itself, since it was a corporation and could act only through its servants. We think these contentions are without merit.

■ Pullman argues that the Alabama case most significant to the present inquiry is Griffin v. Bozeman, supra. There, one Bozeman brought an action in trespass against Griffin and Dobbs, who, while acting as the servants of Bolinger, allegedly cut timber belonging to plaintiff. Bozeman had previously sued Bolinger for the acts of Griffin and Dobbs in perpetrating the same alleged trespass, and Bolinger, upon proving his ownership of the land secured a jury verdict in his favor. Griffin and Dobbs contended in the second proceeding that their liability depended solely upon that of Bolinger, and that Bozeman should not be allowed to proceed against them, with which contention the court, in dicta, agreed. But the significance of this decision lies in the fact that the principal, Bozeman, was sued in the first action in trespass and the agents, Griffin and Dobbs, were sued in the second suit. Here, the employees of Pullman were not parties-defendant in the first suit and no judgment was found exonerating them in their capacity as defendants. Consequently, the exception to the rule of mutuality of estoppel is not available to Pullman since the exception can be enforced only where the relation between the named defendants in the two suits has been that of master and servant or principal and agent. Bigelow v. Old Dominion Copper M. & S. Co., 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009; Griffin v. Bozeman, supra.

■ The remaining contention that the conduct of Pullman was exonerated by the jury is founded upon the hypothesis that whatever acts its employees may have committed in connection with the death of Johnson were necessarily acts of the Pullman Company even though the jury was instructed only with respect to their acts as servants of the railroad. But the fundamental weakness of this argument lies in the fact that the record does not indicate what those acts were, and we may not assume that any duties which the Pullman employees may have owed to Johnson while acting as servants of the railroad were identical with those which they would have owed to him in their capacity as servants of the Pullman Company. See Calhoun v. Pullman Co., 6 Cir., 159 F. 387, 16 L.R.A., N.S., 575; Pullman Co. v. Kelly, 86 Miss. 87, 38 So. 317. The alleged agency could be invoked by Pullman herein only if it were shown that its employees were then acting within the scope of duties assigned to them by Pullman and that the relation of master and servant existed with respect to the very act out of which Johnson's death arose. In the absence of such a showing, an agency cannot be assumed from the

mere circumstance that the porters were employed by Pullman. Goodloe v. Memphis & C. R. Co., 107 Ala. 233, 18 So. 166, 29 L.R.A. 729.

We accordingly hold that the appellee does not come within the exception to the general rule of mutuality of estoppel and that the appellant is not estopped from proceeding herein.

Reversed and remanded.