Paul R. Smith, State Farm Mutual Automobile Insurance Company ("State Farm"), and Alfa Mutual Casualty Insurance Company ("Alfa"), appeal from a judgment entered on a jury verdict in favor of Ruby Brownfield, as administratrix of the estate of her husband, Robert Kenneth Brownfield, deceased. Smith also appeals from a judgment entered on the jury's verdict in favor of State Farm on its cross-claim against Smith. The following contentions are presented for our review: (1) that the trial court erred in permitting Ms. Brownfield to proceed as plaintiff in the trial below; (2) that the trial court abused its discretion in admitting the testimony of Charles Tubbs over proper objections; (3) that the trial court erred in awarding pre-judgment interest against State Farm and Alfa; and (4) that the trial court erred in entering judgment on the jury's verdict in favor of State Farm on its cross-claim against Smith.
In March 1985, Paul R. Smith, Robert Kenneth Brownfield, and Lester Cornelison were involved in a two-vehicle accident on Highway 35 in Jackson County, Alabama. Smith, who was driving a 1978 Chevrolet Monte Carlo, sustained personal injuries and property damage to his vehicle. Brownfield was the driver of the other vehicle involved in the accident, a pickup truck, and Cornelison was a passenger in, and the owner of, that truck. Brownfield and Cornelison were both killed.
At the time of the accident Smith was uninsured. The truck operated by Brownfield and owned by Cornelison was insured by Alfa. The Alfa policy provided $20,000 uninsured motorist coverage for injury to, or death of, any one person. Brownfield had uninsured motorist coverage under three automobile insurance policies issued to him by State Farm. Each State Farm policy provided $20,000 uninsured motorist coverage as excess coverage to the Alfa coverage.
In September 1985, Smith and his wife, Debbie Smith, sued Ms. Brownfield, as administratrix of her husband's estate, and Velma Durham, as administratrix of Cornelison's estate. The complaint alleged that Brownfield caused the accident by negligently or wantonly operating the pickup truck, which the complaint alleged had been negligently entrusted to him by Cornelison.
In November 1986, Ms. Brownfield, in an independent action, sued Smith, State Farm, Alfa, Woodson Jones Dodge, Inc., and Chrysler Motors Corporation. The complaint alleged a wrongful death claim against Smith; separate breach of uninsured motorist insurance contract claims against State Farm and Alfa; and negligence, breach of warranty, and Alabama Extended Manufacturer's Liability Doctrine (AEMLD) claims against Woodson Jones Dodge and Chrysler Motors. Smith moved to dismiss the complaint, or alternatively, to consolidate the action with the action filed by Smith, alleging that Brownfield's claim was in the nature of a compulsory counterclaim arising out of the same facts and circumstances as those alleged in Smith's complaint. State Farm and Alfa denied that Smith had acted negligently or wantonly and alleged that Brownfield had been negligent and that his negligence had caused the accident. State Farm filed a cross-claim against Smith, ascertaining its right of subrogation under its three insurance policies issued to Mr. Brownfield.
Pursuant to Smith's motion to dismiss or consolidate, the trial court consolidated the actions and later ordered Ms. Brownfield aligned as a plaintiff. Before trial, the claim of Debbie Smith was dismissed, and the claims against Woodson Jones Dodge and Chrysler Motors were dismissed. After a full evidentiary hearing, a jury returned a verdict in favor of Ms. Brownfield and against Smith in the amount of $80,000 and in favor of Ms. Brownfield against *Page 576 
State Farm and Alfa in the amounts of $60,000 and $20,000 respectively. The jury found in favor of State Farm on its crossclaim against Smith in the amount of $60,000. The court awarded Ms. Brownfield six percent (6%) per annum interest on the judgment against State Farm and Alfa, computed from the date each insurer was put on actual notice of Ms. Brownfield's claims. Post-trial motions were denied, and Smith, State Farm, and Alfa appealed.
 I.
Smith claims that the trial court erred in allowing Ms. Brownfield to proceed as a plaintiff.
Pursuant to an in camera conference before trial, the trial court ordered that Ms. Brownfield proceed first in conducting voir dire, striking the jury, giving the opening statements, examining witnesses, and presenting closing argument. Smith was given the right to close. Smith correctly notes that Ms. Brownfield's complaint was filed 14 months after his own, and that the two actions were consolidated pursuant to his motion. He argues that allowing Ms. Brownfield to proceed as plaintiff was an abuse of discretion and that it prejudiced him. We are not persuaded by Smith's argument. In Alford v. State Farm Fire Casualty Co., 496 So.2d 19, 21 (Ala. 1986), this Court stated that " '[t]he mode of conducting the examination of witnesses and the order of introducing evidence are matters within the discretion of the trial court,' " quoting Drs. Lane, Bryant,Eubanks Dulaney v. Otts, 412 So.2d 254, 259 (Ala. 1982). Smith requested consolidation. These were actions that the trial court could properly consolidate under Rule 42(a), A.R.Civ.P. In the Committee Comments to Rule 42, it is noted that where there is complete consolidation, as there was in these cases, the actions retain their separate identities. We hold that, when there is a complete consolidation, the trial court has the discretion to determine which party proceeds first in conducting voir dire, striking the jury, giving the opening statements, examining witnesses, and presenting closing arguments.
 II.
Did the trial court err in admitting certain testimony of Charles Tubbs over multiple objections of the defendants as to the materiality and relevancy of such testimony?
The trial court allowed Tubbs to testify as to the movements of a dark colored Chevrolet Monte Carlo automobile as it progressed down Highway 35 toward the site of the accident on the morning of the accident.
The attorney for Ms. Brownfield asked Tubbs the following question:
 "Q. Tell us and describe for these ladies and gentlemen of the jury what you observed the dark Monte Carlo that you saw as you approached and got near close to the bottom of this mountain —"
After objections from the defendants' attorneys, Tubbs answered:
 "A. As I was coming down close to the marina, as I said — it wasn't close to the marina; it was further up the mountain. I was driving about 50, 55. This Monte Carlo came up behind me at a high rate of speed. I continued on down the mountain. The Monte Carlo then dropped back, then the Monte Carlo come again, got right up beside of me, pulled out by the side of me. I saw his taillights. He dropped back behind me again. I continued down the mountain, and here he come again."
Tubbs testified that this occurred "around seven or eight times" before Tubbs accelerated and left the dark Monte Carlo behind.
Smith, State Farm, and Alfa argue, first, that the testimony was irrelevant and, second, that there was no causal connection between the events described by Tubbs and the accident. Ms. Brownfield admits that Smith was not travelling in excess of the speed limit at the time of the accident. The defendants argue that Tubbs's testimony pertaining to the speed of the dark Monte Carlo was irrelevant and should have been excluded. Ms. Brownfield argues that the testimony was offered not to prove that Smith was speeding, but to prove that *Page 577 
Smith was driving in "such a manner as to cause his vehicle to be in the wrong lane, and thus cause the collision."
Tubbs could not see the driver of the "dark Monte Carlo," and could not tell how many people were in the dark Monte Carlo, nor could he identify the car that he saw as the car involved in the accident made the basis of these suits. Tubbs did not see or hear the collision and did not view the site of the accident. Tubbs observed the erratic behavior of a "dark Monte Carlo" approximately 40 minutes before the accident happened and on a stretch of highway 1/2 to 4 miles from the site of the accident.
Erratic driving by a party at a time and place not remote or distant from the time and place of the accident would be material in proving that that party was driving erratically at the time and place of the accident. However, mere evidence that a "dark Monte Carlo" was driven erratically by an unknown person at a place not distant from the accident, but at a time that is remote from the time of the accident, does not provide a reasonable inference that Smith was driving his dark Monte Carlo erratically at the time and place of the accident. C. Gamble, McElroy's Alabama Evidence, § 21.01(1) (3d ed. 1977). Therefore, the testimony of Tubbs that he had seen a dark Monte Carlo being driven erratically was irrelevant and immaterial. Objections to these questions should have been sustained on both grounds.
The power to decide whether evidence is to be excluded because it is not relevant or material rests within the sound discretion of the trial court:
 "This is where such power should lie because, unless some discretion is vested in the trial judge, every ruling upon the admissibility of a particular fact of a kind above-mentioned [relevance, remoteness, confusion of issue, undue prejudice, or unfair surprise] becomes a law unto itself. If any particular rule of evidence runs into numerous borderline cases, we must either give the trial court some discretion in applying it or admit that the rule is not workable at all. This argument for the investiture of a measurable discretion in the trial court must not be taken, however, as suggesting that an appellate court ought not to correct a plainly prejudicial misuse of discretion by the trial court."
C. Gamble, McElroy's Alabama Evidence, § 21.01(6) (3d ed. 1977).
Discretion should be exercised in light of the facts of each case and the probative value of the evidence objected to on grounds of irrelevance and immateriality. Ex parte HoustonCounty, 435 So.2d 1268 (Ala. 1983). Tubbs's testimony in the present case was neither relevant nor material. In other words, it had no probative value. On the other hand, the effect of Tubbs's testimony was highly prejudicial in that the jury was asked to make a quantum leap in logic by finding from that testimony that Smith was driving his car erratically at the time of the accident. Location of the vehicles at the moment of impact was a crucial issue in this case. The trial court must measure the probative value of the evidence against the prejudicial effect of that evidence. Ex parte Houston County,435 So.2d at 1270. Here, the evidence had no probative value and the prejudicial effect was great; therefore, there was a plainly prejudicial misuse of measurable discretion by the trial court. This issue was preserved by Smith, State Farm, and Alfa's motions for new trial; it was reversible error for the trial court to refuse to grant a new trial.
We address the other issues even though it is not necessary due to the judgments being reversed and the cases remanded for a new trial.
 III.
Ala. Code 1975, § 8-8-8, provides in pertinent part:
 "All contracts, . . . bear interest from the day such money . . . should have been paid . . ."
When should uninsured motorist benefits "have been paid"?
In State Farm Automobile Insurance Co. v. Reaves, 292 Ala. 218, 292 So.2d 95 (1974), there was no question of the liability *Page 578 
of the uninsured tort-feasor and no question that the amount of the insured's claim exceeded the amount of the uninsured liability coverage. The claims were denied solely because of an exclusion in the policy. The court held that the exclusion relied on by the insurer was void. Therefore, the money should have been paid on the date that the insurer was apprised of the liability of the uninsured motorist and the amount of the insured's claim. See, also, State Farm Mutual AutomobileInsurance Co. v. Bradley, 293 Ala. 695, 309 So.2d 826 (1975).
In the cases at issue, Smith's liability was disputed. He had filed an action against the estate of Brownfield, operator of the other vehicle involved in the accident, alleging personal injuries and property damage, 14 months before Ms. Brownfield filed an action for wrongful death against Smith.
The insurance contracts provide that State Farm and Alfa will pay damages an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle for "bodily injury" (which is defined to include death that results from bodily injury).
It was for the trier of fact to determine whether Ms. Brownfield was legally entitled to collect anything from Smith, the uninsured motorist. Likewise, Ms. Brownfield's action against Smith was brought under the Alabama Wrongful Death Statute (Ala. Code 1975, § 6-5-410), which allows a personal representative to recover "such damages as a jury may assess . . . for the wrongful act, omission, or negligence of any person . . ., whereby the death of his testator or intestate was caused. . . ." The damages are punitive damages only. See, e.g., Tatum v. Schering Corp., 523 So.2d 1042 (Ala. 1988). We cannot find an offer of proof by Ms. Brownfield of the amount of Alfa's or State Farm's liability under the uninsured motorist coverage.
These cases are similar to State Farm Mutual Automobile Ins.Co. v. Fox, 541 So.2d 1070 (Ala. 1989). There, in reference to prejudgment interest, we wrote the following:
 "With only punitive damages recoverable in wrongful death cases, it is doubtful that in such cases the amount of an insurer's liability under underinsured motorist coverage can be proven with the specificity necessary to recover prejudgment interest from the insurer. This would not be the first time that this Court's peculiar interpretation of the damages aspect of our wrongful death statute has potentially deprived a claimant of a right the claimant might have had if personal injury, and not death, had resulted."
541 So.2d at 1073. The trial court erred in assessing prejudgment interest.
 IV.
Smith contends that the judgment in favor of State Farm on its cross-claim against Smith is improper because there is no evidence that State Farm had paid Brownfield on Brownfield's judgment against State Farm. Smith relies on Aetna InsuranceCo. v. Hann, 196 Ala. 234, 72 So. 48, 50 (1916), which held that the right of subrogation does not inure to the subrogee until he has paid or offered to pay the subrogor.
We find no merit in this argument. In Brown MechanicalContractors, Inc. v. Centennial Insurance Co., 431 So.2d 932
(Ala. 1983), an insurer brought suit against third parties who, the insurer alleged, had wronged the insured. Citing AetnaInsurance Co. v. Hann, supra, the third-party defendants argued that an insurer may not bring a subrogation action until it has paid the insured. 431 So.2d at 936. This Court disagreed, holding:
 "[T]he rule making payment a prerequisite to subrogation is for the benefit of the insured. As explained in Aetna Insurance Company v. Hann, supra, an insured's 'demand against the wrongdoer must be satisfied so as to relieve him of trouble and risk; and it is this securing of satisfaction by the insured which gives the insurer the right to be subrogated to the rights of the insured against *Page 579 
the wrongdoer.' 196 Ala. at 238, 72 So. at 51."
431 So.2d at 937. Thus, it is Ms. Brownfield, not Smith, who may object to the lack of payment. However, if State Farm has no obligation to pay Ms. Brownfield the $60,000 in uninsured motorist benefits, it has no right under the insurance policy to subrogation against Smith.
For the reasons stated above, we reverse the judgments and remand the cases for a new trial.
88-824 REVERSED AND REMANDED.
88-825 REVERSED AND REMANDED.
88-827 REVERSED AND REMANDED.
88-906 REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, ADAMS and KENNEDY, JJ., concur.