Because I would affirm the judgment in this case, I respectfully dissent.
Both of the promissory notes signed by Dixon read, in pertinent part, as follows:
 "The obligors shall be jointly and severally liable for all indebtedness represented by this note and have subscribed their names hereto without condition that anyone else should sign or become bound hereon and without any other condition *Page 710 whatever being made." (Emphasis added.)
In addition, the personal guaranty agreement that he signed provided, in pertinent part, as follows:
 "The undersigned hereby waives acceptance of this guaranty by the Bank and agrees that this guaranty shall be valid and binding upon the undersigned when delivered to said Bank by anyone having the possession hereof, and that such liability is not conditioned on the execution of this guaranty by any other person or upon the occurrence of any other event." (Emphasis added.)
Dixon was an intelligent businessman and was not prevented in any way from reading these loan documents.
SouthTrust Bank and Flatt moved for a summary judgment, relying primarily on the loan documents, the two depositions given by Dixon, and the affidavit of Flatt. SouthTrust and Flatt argued, among other things, that the undisputed facts showed that they were entitled to a judgment as a matter of law. Dixon opposed the motions, relying primarily on his depositions, his own affidavit, and the depositions of the DeKays. SouthTrust and Flatt objected to Dixon's affidavit and certain portions of the depositions on which he relied,[2] on the ground that they were not admissible evidence and, therefore, that they were in violation of Rule 56, A.R.Civ.P. Dixon contends, among other things, that the trial court erred in entering the summary judgment, because, he says, he presented sufficient evidence, i.e., at least a "scintila," to establish a prima facie case of fraud in the inducement. SouthTrust and Flatt argue now, as they did in the trial court, that they were entitled to a judgment as a matter of law. They maintain that the undisputed facts show that proof as to at least one of the elements of Dixon's claims is missing. After carefully reviewing the record and the briefs of the parties, I am persuaded that the trial court properly entered the summary judgment. As the following discussion will show, my conclusion in this regard is based upon my determination that there is no genuine issue of material fact as to one of the elements of Dixon's fraud claims — i.e., that it is clear that one of the elements could not be proven at trial — and, therefore, that SouthTrust and Flatt were entitled to a judgment as a matter of law. Accordingly, I pretermit any discussion of the other issues raised by the parties.
The elements of actionable fraud based on a false representation are: (1) a duty to speak the truth; (2) a false representation of a material fact made intentionally, recklessly, or innocently; (3) action upon the false representation by the plaintiff; and (4) damages proximately resulting from the false representation. Salter v. AlfaInsurance Co., 561 So.2d 1050 (Ala. 1990); Alfa MutualInsurance Co. v. Northington, 561 So.2d 1041 (Ala. 1990).
The promissory notes, along with the personal guaranty agreement signed by Dixon, were introduced by SouthTrust and Flatt in support of their motions for summary judgment; they made a prima facie showing that Dixon did not act upon any representations that may have been made by Flatt concerning the amount of collateral that was to be provided by the DeKays. By signing those documents, Dixon acknowledged that there were no conditions to his incurring the debt. After this prima facie showing was made, the burden shifted to Dixon to show by admissible evidence that a genuine issue of material fact existed. Perry v. Mobile County, 533 So.2d 602 (Ala. 1988). Horner v. First National Bank of Mobile,473 So.2d 1025, 1027 (Ala. 1985) ("[i]t is not enough that the opposing party merely disputes or refutes an immaterial fact, nor is it enough that evidence which is inadmissible . . . is advanced to contravene that of the movant").
Dixon relied primarily on his own depositions and on the depositions of the DeKays to establish a triable issue of fact. In his *Page 711 
depositions, Dixon testified that he had signed the notes and the other loan documents only because Flatt had assured him that the DeKays were giving sufficient collateral to secure payment of the debt. Dixon's testimony in this regard was supported by the deposition testimony of the DeKays. As previously noted, however, SouthTrust and Flatt objected to this evidence on the ground that it was inadmissible under both the parol evidence rule and the general rule requiringexclusion of immaterial evidence, and asked the trial court not to consider it. The record does not reveal whether the trial court considered this evidence; however, if the evidence was inadmissible, then this Court, in determining whether summary judgment was proper, must assume that the trial court did not consider it. McMillian v. Wallis,567 So.2d 1199 (Ala. 1990).
A "material fact," in the context of a fraud action, is a fact that is capable of reasonably inducing someone to act.Fraser v. Reynolds, [Ms. 88-1466, -1522, September 14, 1990] (Ala. 1990); Alfa Mutual Ins. Co., supra; see, also, Lawson v. Cagle, 504 So.2d 226 (Ala. 1987);Bank of Red Bay v. King, 482 So.2d 274 (Ala. 1985). InHickox v. Stover, 551 So.2d 259, 263 (Ala. 1989), a majority of this Court, quoting Chief Justice Hornsby's opinion concurring specially in Southern States Ford, Inc. v.Proctor, 541 So.2d 1081, 1092 (Ala. 1989), approved the following standard by which a person's action on a representation has to be assessed:
 "In light of modern society's recognition of a standard of business ethics that demands that factual statements be made carefully and honestly,
 " '[r]eliance should be assessed by the following standard: A plaintiff, given the particular facts of his knowledge, understanding, and present ability to fully comprehend the nature of the subject transaction and its ramifications, has not justifiably relied on the defendant's representation if that representation is "one so patently and obviously false that he must have closed his eyes to avoid the discovery of the truth." ' "
Later, this Court explained that under both the Hickox
standard, and the "reasonable reliance" standard most closely associated with Torres v. State Farm Fire CasualtyCo., 438 So.2d 757 (Ala. 1983), a person who is under a legal duty to read and to fully understand the nature of a transaction,[3] and who signs a contract containing language that is clearly contrary to a pre-execution parol representation,[4] cannot, as a matter of law, act on that representation. See Ramsay Health Care, Inc. v.Follmer, 560 So.2d 746 (Ala. 1990). Therefore, in holding that an oral representation that is made before the execution of a written contract to the contrary is not legally capable *Page 712 
of inducing action on the part of someone who is under a legal duty to read and to fully understand the nature of the transaction, this Court has, in effect, taken the position that, where those circumstances exist, evidence tending to prove such a representation is not material to a claim of fraud in the inducement (i.e., that evidence of such a representation is legally insufficient to prove a false representation of material fact) and should be disregarded. For example, inTyler v. Equitable Life Assurance Society of the UnitedStates, 512 So.2d 55 (Ala. 1987), this Court held, as a matter of law, that it was not reasonable for the plaintiffs to rely on an alleged representation that had been made prior to the execution of, and that was contradicted by, a note and mortgage.
The position taken in Tyler is different from the position that this Court has taken in the past when considering what effect a subsequent written contract has on a pre-execution parol representation. For example, in AlabamaMachinery Supply Co. v. Caffey, 213 Ala. 260, 262,104 So. 509, 511 (1925), this Court, holding that evidence of a parol warranty was admissible, stated:
 "A stipulation in the written contract that there are no verbal understandings not incorporated therein does not estop the party to set up fraud in verbal misrepresentations inducing the contract."
It is hard to reconcile the positions taken by this Court inCaffey and in Tyler. In Caffey, this Court refused to hold the trial court in error for admitting evidence of a parol warranty, even though the plaintiff was a party to a written contract clearly stipulating that such a warranty had not been made. In Tyler, this Court held that the note and mortgage rendered the oral representation of the defendant's agent insufficient as a matter of law to prove the fraud alleged, even though it does not appear that any objection was made to the admission of evidence of that representation. The need to reach some common ground between these two positions is obvious. This Court cannot abandon the desirable goal of maintaining stability and certainty in the contractual relations of those who have made a definite agreement, as it appears to have done in Caffey, nor can it assume the role of a factfinder in deciding "as a matter of law" that a plaintiff has not acted "reasonably" under the circumstances, as it appears to have done in Tyler. I note that this Court's willingness to venture into the factfinding arena in fraud cases has continued to this day, although the Court has changed the standard for reviewing a person's action on a particular representation. See Hickoxv. Stover, supra.
This Court is not a factfinding body, and it is ill suited to determine whether a person's action on a particular representation was "reasonable" or was "justifiable" under the circumstances. When a plaintiff, without an objection by the defendant, introduces evidence that the defendant made a false representation to him and that he acted on that false representation to his detriment, by what authority should this Court, or the trial court, disregard that evidence in determining whether the plaintiff acted reasonably or justifiably, even if the plaintiff did sign a contract that was clearly contrary to the representation? I think that there is a better way to approach cases of this kind. Evidence like that which Dixon offered in this case should be excluded pursuant to a proper objection, Smith v. Brownfield, 553 So.2d 573
(Ala. 1989) (evidence that is not material to the disposition of a claim is subject to objection and exclusion), but if no objection to the otherwise inadmissible evidence is made, it should be considered along with all of the other evidence in the case in determining whether the plaintiff could act on the representation.
Approaching the present case from this standpoint, I would hold that Dixon's and the DeKays' testimony regarding any representations concerning the sufficiency of the DeKays' collateral that may have been made to him by Flatt prior to the execution of the loan documents was not admissible in furtherance of his fraud claim. The promissory notes and personal guaranty agreement signed by Dixon, introduced by SouthTrust and Flatt in support of their motions for summary judgment, made a *Page 713 
prima facie showing that Dixon did not act on any representations that may have been made by Flatt concerning the amount of collateral that was to be provided by the DeKays. Dixon, who, the record shows, was under a legal duty to read and to fully understand the nature of the transaction, testified that Flatt made certain oral representations concerning the amount of the DeKay's collateral and that he acted on those representations. That testimony was not material to his fraud claim; consequently, it was subject to objection and exclusion under Rule 56. I would assume, therefore, that the trial court, pursuant to the objections of SouthTrust and Flatt, did not consider this evidence. Accordingly, I would overrule the holdings in Alabama Machinery Supply Co. v.Caffey and Tyler v. Equitable Life Assurance Societyof the United States, as well as the holdings in other similar cases, to the extent that they are inconsistent with the views that I have expressed herein, and I would hold that the summary judgment for SouthTrust and Flatt was proper, on the ground that there was no genuine issue of material fact (Rule 56(c)) regarding the absence of one of the essential elements of Dixon's fraud claims — a false representation of material fact.[5]
[2] Although SouthTrust and Flatt initially introduced Dixon's depositions in support of their motions for summary judgment, they later objected to the portions of those depositions that were relied on by Dixon. This objection was brought to the trial court's attention prior to its ruling on the motion.
[3] As a general rule, a person is under a legal duty to read and to understand what he signs. Traylor v. Bell,518 So.2d 719 (Ala. 1987); First National Bank of Mobile v.Homer, 494 So.2d 419 (Ala. 1986). However, under certain circumstances, a person may be relieved of this duty so that he can act on an oral representation even though the representation is inconsistent with a contract subsequently signed by him. See, e.g., Arkel Land Co. v. Cagle,445 So.2d 858 (Ala. 1983) (held that the plaintiff, who had a fifth-grade education, could act on a false representation concerning the content of a mineral lease that was made by the defendant's attorney, who, the plaintiff thought, was acting on his (the plaintiff's) behalf); Century Plaza Co. v. HibbettSporting Goods, Inc., 382 So.2d 7 (Ala. 1980) (held that the plaintiff could act on a false representation that was made by the defendant's agent that the contents of a shopping center lease, which had previously been read and rejected by the plaintiff, had not been changed); Connell v. State FarmMut. Auto. Ins. Co., 482 So.2d 1165 (Ala. 1985) (held that the plaintiff could act on a false representation that was made by the defendant's agent that the plaintiff was applying for certain insurance coverage, when the language used in the application was technical in nature and its meaning was peculiarly within the knowledge of the agent). For a more recent case that is similar to Connell, seeLiberty National Life Ins. Co. v. Sherrill,551 So.2d 272 (Ala. 1989). In Liberty National, although the opinion, which I wrote, is not clear on the matter, the language used in the insurance application was also technical in nature and its meaning was peculiarly within the knowledge of the agent.
[4] It is axiomatic that a person is not required to anticipate that he may be the victim of a fraud; therefore, if the contract is not clearly contrary to a pre-execution parol representation, he can act on that representation.
[5] Although I would not hold that Dixon's testimony was inadmissible under the parol evidence rule, I note that that rule, like the exclusionary rule I would apply in this case, prohibits the introduction of immaterial evidence. The parol evidence rule does not exclude certain evidence because, for one reason or another, it is untrustworthy or undesirable as a means of evidencing a fact sought to be proved. The rule simply states that certain evidence is legally ineffective. SeeHibbett Sporting Goods, Inc. v. Biernbaum,375 So.2d 431 (Ala. 1979). The logic of the parol evidence rule is that when parties have made a contract and have clearly expressed it in a writing to which they have assented as the complete and accurate integration of that contract, any evidence, whether parol or otherwise, of antecedent understandings and negotiations is not material to any question involving rights and obligations under the contract.
I also note that in Alabama the application of both the parol evidence rule in contract cases and the exclusionary rule, which I would apply in this case, may be waived if a proper objection is not made, and that evidence admitted without objection should not be disregarded in resolving the issues presented. See Alfa Mutual Ins. Co. v. Northington, supra ("[i]n Alabama . . . it has been generally recognized that parties to a lawsuit may try their case on evidence that would otherwise be inadmissible upon proper objection and that where evidence violative of the parol evidence rule is admitted without objection, it may be considered and allowed such force and effect as its weight entitles it in construing the agreement of the parties"). But see Annot., 81 A.L.R.2d, Modern Status of Rules Governing Legal Effect ofFailure to Object to Admission of Extrinsic Evidence Violativeof Parol Evidence Rule 249 (1977), for a collection of cases from other jurisdictions holding that evidence violative of the parol evidence rule may not be considered, even though it was admitted without objection.