PER CURIAM.
Laura Jane Garner and her husband, Bill Garner, appeal a judgment based on a jury verdict in favor of Dr. A. Carl Collins. The Garners contend that the trial court erroneously refused to allow them to submit into evidence certain “office logs” reflecting patient visits to Dr. Collins’s office on October 11, 1986. We affirm.
Mrs. Garner received stitches from Dr. Collins in her elbow in September 1986, and upon her return to his office to have the stitches removed on October 1, 1986, she complained that the toes on her left foot had turned blue. Garner contends that Dr. Collins diagnosed her problem as Ray-naud’s disease and advised her to return to his office on October 8. On October 8, Garner contends, Dr. Collins told her that he thought her foot was much better and sent her home; she returned to his office, however, on October 11, experiencing pain in her foot. On October 11, Garner concedes, she was told by Dr. Collins’s staff that he was not in the office. The nurse in the office examined Garner’s foot, asked Mrs. Garner if she wanted to go to the emergency room, and, when Mrs. Garner answered that she would try to wait until she could see Dr. Collins, instructed Mrs. Garner to return to the doctor’s office the following Monday. On Monday, Dr. Collins again examined Mrs. Garner’s foot and he recommended that she see a vascular surgeon. The Garners contend that Dr. Collins’s failure to diagnose the seriousness of Garner’s condition resulted in the eventual amputation of her left foot. They sued him, alleging malpractice. The pre-trial order stated the position of the plaintiffs as follows:
“Plaintiff(s) Contend: That the defendant’s negligence consists in failing to provide preventive treatment which would have prevented the plaintiff from thrombophlebitis prior to the occurrence of the symptoms on October 1, 1986, failure to diagnose ‘blue toe syndrome’ and the thrombophlebitis of the plaintiff and to treat said condition and/or to refer the plaintiff to a specialist for treatment of that condition, all of which is alleged to have proximately caused a necessity for the plaintiff’s left foot to be amputated.”
At trial, the plaintiffs’ experts were given hypotheticals wherein they were told to assume that the doctor had been gone from the office on October 11. At no time during these hypotheticals were the experts asked any questions regarding the standard of care applicable if the doctor was, in fact, in the office and yet did not see the patient, Mrs. Garner. After the testimony of these experts, the plaintiffs on cross-examination attempted to offer into evidence certain logs kept by the staff in Dr. Collins’s office. The parties agree that the notation “OC” in the office logs of Dr. Collins’s office denotes an “office call” whereby the patient would be billed for an office visit. There appears to be some confusion, however, as to whether the doctor would have to examine a patient in order for “OC” to be entered into those logs. Although Dr. Collins contended at trial that he was out of town on October 11, 1986, there were several entries of *248 “OC” into the office logs on that date. These entries pertained to other patients of Dr. Collins, and there was no such entry on October 11 pertaining to Mrs. Garner. In fact, Garner concedes that she did not see Dr. Collins on October 11.
On cross-examination, counsel for the Garners attempted to offer the office logs of October 11, 1986, into evidence in order to impeach Dr. Collins’s testimony that a patient would be charged for an office call only if he had personally examined the patient. Such evidence would be irrelevant to the issue in the case and the arguments of the parties as set forth in the pre-trial order. Furthermore, the expert opinions were based on the assumption that Collins was, in fact, out of the office on October 11. No testimony was taken as to the standard of care applicable if Collins was, indeed, in the office at the time of Garner’s visit to his office on that date. In fact, the Garners did not argue that he was, in fact, there when Mrs. Collins went to his office. Under the facts of this case, the only reason the plaintiffs could have wanted to offer the office logs into evidence would be to support an inference that Dr. Collins charged patients for office calls when, in fact, he did not examine them. We find, therefore, that the trial court did not abuse its discretion in refusing to allow into evidence the office logs in question. See Smith v. Brownfield, 553 So.2d 573 (Ala.1989).
AFFIRMED.
HORNSBY, C.J., and ADAMS, HOUSTON, STEAGALL and INGRAM, JJ., concur.