Lisa Marie Bonner, individually and as administratrix of the estate of her husband Greg Bonner, and Connie Hubbard, individually and as administratrix of the estate of her husband Randy Hubbard, filed separate actions, which were consolidated; both actions alleged negligence and wantonness by the Electric Power Board of the City of Scottsboro ("Power Board") for failing to insulate electric lines that were involved in an accident that killed their husbands.[1] At trial, the court charged the jury on the negligence claims, but refused to charge the jury on wantonness. The jury returned a verdict favoring the Power Board. Ms. Hubbard and Ms. Bonner filed a motion for new trial based on the trial court's refusal to charge the jury on wantonness, but the trial court denied that motion.
These consolidated actions were pending on June 11, 1987, and thus the scintilla evidence rule applies. § 12-21-12, Ala. Code 1975; Kizziah v. Golden Rule Insurance Co., 536 So.2d 943
(Ala. 1988).
On May 25, 1984, Greg Bonner and Randy Hubbard were working for Steel Systems, Inc., performing steel erection work on a construction site located at the Lozier Corporation ("Lozier") plant in Scottsboro. After lunch, Mr. Bonner and Mr. Hubbard were assigned to stand on either end of a steel beam to help stabilize and guide it as it was lifted from the ground to the bed of a vehicle. The steel beams were then to be transported from the location where Mr. Bonner and Mr. Hubbard were working, at the western side of the Lozier plant, to the southern side of the plant, where the construction site was located.
As Greg and Randy's supervisor used a crane to lift the steel, he raised the boom of the crane into three uninsulated electric lines. The electrical current traveled through the crane into the steel beams and electrocuted Mr. Bonner and Mr. Hubbard. The insulation provided by the rubber tires on the crane protected the supervisor from electrocution.
Ms. Hubbard and Ms. Bonner argue two theories under which they claim the Power Board wantonly failed to insulate the power *Page 262 
lines. The first theory is based on action (or nonaction) of H.K. Thomas, a lineman who had worked 22 years for the Power Board. The evidence indicates that 30 minutes before the accident occurred, Thomas was at the Lozier plant to check some equipment that supplies electricity to the plant; that he parked his vehicle at approximately the same location as where the accident occurred; that he walked past a location where workers were eating lunch under a tree and waved at them; and that the crane involved in the accident was parked near the tree where the workers were eating lunch. Thomas testified that he saw the steel beams located near the power lines, although, as even the plaintiffs admit in their brief, "it is unclear exactly how close he perceived the steel to be to the lines." Thomas also testified that he had the materials in his vehicle to insulate the electric lines and that it would have taken approximately one hour to do so; that he knew there was some construction going on at the plant; and that he knew the electricity from the lines would electrocute a person.
Wanton conduct is "an acting with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury." Lynn Strickland Sales Service,Inc. v. AeroLane Fabricators, Inc., 510 So.2d 142, 145
(Ala. 1987). Ms. Hubbard and Ms. Bonner contend that the evidence indicates that Thomas acted wantonly because he saw the crane, saw the steel beams near the power lines, and knew there was construction going on at the plant, but chose not to insulate the power lines, despite what they contend was a knowledge or consciousness, based on the facts set out above, that the crane might run into the electric lines while carrying the steel and thus electrocute someone. That argument does not withstand scrutiny.
There is no direct testimony that Thomas saw the crane, although the evidence creates an inference that Thomas saw it. "One fact cannot be inferred from another fact which is itself an inference, since an inference cannot be grounded on an inference." Malone Freight Lines, Inc. v. McCardle, 277 Ala. 100, 167 So.2d 274 (1964). Accordingly, the inference that Thomas saw the crane, even coupled with his testimony that he saw the steel beams somewhere near the electric lines, cannot properly serve as a basis for the inference that Thomas somehow knew or was conscious that the crane would be used to move the steel beams. Without even evidence that Thomas knew or was conscious that the crane would be used to move the steel beams, the plaintiffs' first theory of wantonness fails.
The plaintiffs' second theory of wantonness is that the evidence indicates that Thomas and Louis Price, the manager of the Power Board, wantonly failed to "ascertain the conditions at the Lozier plant, including the fact that a crane was being used to move steel beams under the Power Board's [electric] lines." We do not hold that under the facts of this case the Power Board had the general duty to ascertain everywhere at the plant someone might operate a crane and make it contact electric lines. Considering the substance of their argument, we construe the plaintiffs' claim to address more specific conduct: the plaintiffs seem to claim that because Thomas and Price, agents of the Power Board, knew of ongoing construction at the plant, they had a duty, which they wantonly failed to perform, to protect the operators of machines on the construction project and those who might be harmed from the operation of those machines by contact with electric lines.
The plaintiffs have alleged nothing concerning Thomas in this claim that changes our analysis of their evidence presented in relation to their first claim. Once again, the plaintiffs cannot use the inference that he saw the crane to prove his consciousness or knowledge that the crane would contact the power lines while moving steel beams. Accordingly, they cannot show that Thomas consciously or with knowledge of danger disregarded the alleged duty described above.
As to Mr. Price, the evidence indicates that he knew there was some construction *Page 263 
being conducted at the plant but did not know details concerning the construction, such as the location of the construction site or that there were steel beams being transported by cranes, or that the construction involved steel beams; that the actual construction site was located on the south side of the plant, and the accident occurred on the west side of the plant; that federal regulations require notification to a power company whenever a crane is being operated within 10 feet of an electric line and state law requires notification to a power company whenever a crane is operated within 6 feet of an electric line, but neither the Power Board nor Price received such notification; that Price first became aware of the steel beams and the crane when he went to the site following the accident. This does not provide even a scintilla of evidence that Price consciously or with knowledge of danger disregarded the alleged duty described above.
When the defendant makes a prima facie showing that it was not wanton, and the plaintiff fails to produce a scintilla of evidence of wantonness, the issue of wantonness should not be submitted to the jury. Joseph v. Staggs, 519 So.2d 952, 954-55
(Ala. 1988). If there is no evidence to support a party's proposed jury instruction, then the refusal of the instruction is not reversible error. Ford Motor Co. v. Phillips,551 So.2d 992, 995 (Ala. 1989).
The judgment is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and HOUSTON, JJ., concur.
[1] Ms. Hubbard and Ms. Bonner's actions claimed damages from several other defendants, who either settled with the plaintiffs or had summary judgment entered in their favor. The Power Board is the only defendant involved in this appeal.