Willie J. Foster, as administrator of the estate of Brenda Perdue, filed a wrongful death action against Avon-Avalon, Inc., Alabama Gas Corporation, Robert Leavall, and Leavall Banking Company, Inc. (hereinafter "Leavall Company"). One month later, Barbara A. Collins, as administratrix of the estate of Larry Collins, sued the same defendants for the wrongful death of Larry Collins. The plaintiffs alleged that Brenda Perdue and Larry Collins had died from carbon monoxide poisoning caused by a faulty gas heater and ventilation pipe in their apartment; Alabama Gas manufactured the pipe and installed it in their apartment, which Avon-Avalon owned and which the Leavall Company managed. The trial court granted the defendants' motion to consolidate the two cases for trial. The jury returned verdicts against the defendants jointly and severally, awarding $400,000 in damages to each plaintiff. The trial court entered judgments on those verdicts. Avon-Avalon and the Leavall Company have appealed from both judgments; those parties are referred to in this opinion as "the defendants."[1]
"Upon review of a jury verdict, we presume that the verdict was correct, and this presumption is strengthened by the trial court's denial of a motion for a new trial." Alpine BayResorts, Inc. v. Wyatt, 539 So.2d 160, 162 (Ala. 1988). We will not overturn a judgment based on a jury verdict unless the evidence against the verdict is so much more credible and convincing to the mind than the evidence supporting the verdict that it clearly indicates that the jury's verdict was wrong and unjust. Alpine Bay Resorts.
The record shows that Brenda Perdue and Larry Collins moved into Unit 402 Underwood at Avon Court Apartments on December 6, 1992. On January 14, 1993, Perdue and Collins were found dead in that apartment; they had died from carbon monoxide poisoning. The lethal fumes had escaped from a cracked vent from a space heater that *Page 572 
was connected to the floor of the living room. The gas heater had a ventilation system consisting of "cement asbestos" pipes called "transit vents," and the carbon monoxide that killed Perdue and Collins had leaked from a two-inch-wide crack in one of the transit vents. Experts for the plaintiffs testified at trial that the crack in the transit pipe had existed as early as 1979 and that the pipe had been improperly repaired. Expert testimony also established that the crack probably occurred because the transit pipes were inadequately supported and the vent system was improperly installed.
Vera M. Owens, a friend of Collins and Perdue, testified that she had smelled leaking gas in Unit 402 on four occasions when she had visited the apartment during the month that the two lived there. She testified that, during a mid-morning visit to Unit 402 on December 23, 1992, she noticed an unusually strong gas odor and asked Perdue whether she had called anyone to inspect regarding the problem. Owens stated that she noticed the smell again when she visited Perdue on December 26 and again asked Perdue whether she had called her landlord to report the problem. Over objection, Owens then testified that Perdue picked up the telephone, in her presence, dialed a number, and asked to speak to "Mrs. Henry." Owens stated that Perdue told the person on the other end of line that the odor of gas was "still" in the apartment and asked to have someone come and take care of the problem. Owens said that she visited Perdue again on December 31 and again smelled the odor of gas, and she said she urged Perdue to give her apartment manager a second call. Again over objection, Owens testified that during that visit Perdue dialed a number in her presence, asked to speak to Mrs. Henry, and then said into the telephone that the odor was still in the apartment and that it definitely was not the odor of paint. Mrs. Willie Mae Henry, an employee of the Leavall Company, the manager of Unit 402, testified at trial that she was responsible for receiving and processing tenants' complaints, but she denied ever having received any calls from Perdue.
We emphasize that, generally, "a landlord is not liable in tort for injuries to his tenants that are caused by a defect in the leased premises, unless [1] the injury-causing defect existed at the time of the letting, [2] was known to the landlord, and [3] was concealed from the tenant." Johnson v.Passmore, 581 So.2d 830, 831 (Ala. 1991). The defendants argue that Owens's testimony concerning Perdue's December 26 and December 31 telephone calls to the Leavall Company is the only evidence of notice to the landlord and that that testimony was inadmissible because, the defendants say, the telephone calls were not properly authenticated.
In order to introduce evidence of a telephone conversation to establish the content of the conversation, the identity of the speaker must be satisfactorily established. Holcombe v.Whitaker, 294 Ala. 430, 318 So.2d 289 (1975). C. Gamble,McElroy's Alabama Evidence, § 329.01 (4th ed. 1991), sets out the following means of authentication:
 "A telephone message, purporting to come from a particular person, is sufficiently authenticated as that of a particular person, where the witness-hearer testifies that he knows that person's voice and recognized the voice heard as that of the alleged person. . . .
 "Where the witness has himself called the telephone number of a specified person or business concern as listed in the telephone directory, and the person answering says that he is the person called for, or that he represents the business concern, the identity of the person answering and also his authority to represent the business concern is sufficiently authenticated, even though the caller does not recognize the voice of the person answering the call."
In this case, the record shows that Owens never heard the voice of the individual Perdue spoke with over the telephone and did not even see the number that Perdue dialed. Owens testified that she could describe the conversation only from what she heard Perdue say into the telephone; accordingly, the telephone call was not authenticated at trial. *Page 573 
The plaintiffs argue that the telephone calls fall under the "notice" exception of the hearsay rule and, thus, did not need to be authenticated. The "notice" exception is as follows:
 "If it is material to prove that a person at a specified time had been put on notice about a matter, or entertained a specified belief, acted in good or bad faith, had a specified motive to do or not to do an act or to do an act with a specified motive, or was mentally deranged, proof that a statement was made to him prior to the time in question which was reasonably calculated to create, and which is offered for the purpose of showing, notice, belief, good or bad faith, motive or mental derangement is not violative of the hearsay rule."
C. Gamble, McElroy's Alabama Evidence, § 273.02 (4th ed. 1991).
The defendants argue that this case does not fall under the "notice" exception to the hearsay rule because, they say, the exception assumes that the witness knows the identity of the person to whom notice is given. We agree. This Court has previously held that evidence of a telephone conversation witnessed by a third party could be admissible; however, in those cases so holding, the identity of the parties to the telephone call was established by, at the least, circumstantial evidence. In Ex Parte Hand, 472 So.2d 675 (Ala. 1985), a defendant who was accused of stealing an automobile from a lienholder argued that during a conversation over a mobile telephone the lienholder had authorized him to repossess the vehicle. A witness who was with the defendant at the time of the call testified that she heard the voice of the lienholder as he identified himself to the defendant; thus, the call was properly authenticated.
In Yancey v. Ruffin, 281 Ala. 633, 206 So.2d 878 (1968), testimony of a telephone conversation between the witness and a purported agent of the corporate defendant was held to be inadmissible hearsay because there was no evidence to establish the identity of the person with whom the witness spoke. Likewise, in Birmingham News Co. v. Browne, 228 Ala. 395,153 So. 773 (1934), the plaintiff attempted to prove that a sheriff's department had ratified an illegal arrest by offering testimony about a telephone conversation. This Court held that the evidence was inadmissible because the individual on the other end of the telephone line had not been identified. The Court dealt with what it described as evidence of "a conversation by some unknown and unnamed officer over the telephone" and said that that evidence "was merely conjectural and speculative as to what was said by the party at the other end of the line, who he was, and whether or not he had authority in the matter." 228 Ala. at 397, 153 So. at 775.
The plaintiffs contend that, because Owens did not testify as to what the other person told Perdue in reply to the notice Perdue gave, it was not necessary to establish the identify of the person with whom Perdue spoke. We do not agree. The critical element to be proved is whether Perdue gave notice of the gas leak to the defendants; to establish this element, the plaintiffs had to show that the person to whom Perdue spoke was a representative of the Leavall Company. Whether the representative then made a reply or remained silent is irrelevant to whether the notice was given.
There is simply no evidence to establish the identity of the individual Perdue spoke with, and this requirement is not obviated by the notice exception to the hearsay rule; accordingly, the testimony was inadmissible. Owens's testimony was not, however, the only evidence that the defendants had notice that gas was leaking from the cracked transit pipe. Willie May Williams, who had occupied Unit 402 for five years before Perdue and Collins moved in, testified that she had frequently detected gas odors during her occupancy and had repeatedly given notice to Mrs. Henry, to the maintenance personnel, and to agents at the Leavall Company's downtown office. Moreover, expert witnesses for the plaintiffs testified that the defect in the transit pipe would have been present during the time that Williams said she gave notice of the gas odors.
We must review the tendencies of this evidence most favorably to the plaintiffs as the prevailing parties and must indulge such reasonable inferences as the jury was free to *Page 574 
draw therefrom. Campbell v. Burns, 512 So.2d 1341 (Ala. 1987). Because the jury could have inferred from the properly admitted testimony that the Leavall Company had notice of the defective transit pipe, the trial court's error in admitting Owens's testimony concerning Perdue's telephone conversation was harmless.
The defendants next argue that the trial court erred in charging the jury as to a landlord's liability for latent defects in leased premises. The trial court charged:
 "Now, the plaintiffs contend that a latent or hidden defect existed with a heating and venting system inside the apartment before it was rented to Larry Collins and Brenda Perdue, that the defendants knew or reasonably should have known
while Larry Collins and Brenda Perdue did not know, and said defect was concealed. If you are reasonably satisfied from the evidence of these facts, then you must find the defendants breached a duty of care to the deceased and were thereby negligent."
The defendants point out that a landlord has no duty under Alabama law to inspect for latent defects and argue that the "reasonably should have known" language of the jury charge led the jury to believe that such a duty existed. The record shows, however, that the trial court went on to specifically instruct the jury that "a landlord has no duty to inspect the premises for latent defects" and that "a landlord is not responsible for defects that he has no knowledge of unless he knew or reasonably should have known of the existence of those defects." These instructions mirror § 358, Restatement (Second)of Torts (1965), which this Court adopted in Dunson v.Friedlander Realty, 369 So.2d 792 (Ala. 1979):
 "(1) A lessor of land who conceals or fails to disclose to his lessee any condition, whether natural or artificial, which involves unreasonable risk of physical harm to persons on the land, is subject to liability to the lessee and others upon the land with the consent of the lessee or his sublessee for physical harm caused by the condition after the lessee has taken possession, if
 "(a) the lessee does not know or have reason to know of the condition or the risk involved, and
 "(b) the lessor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk."
369 So.2d at 794 (quoting § 358). Reviewing the jury charge as a whole, we conclude that it provided an accurate statement of the pertinent law; accordingly, the trial court did not err in giving that charge.
The defendants next argue that the trial court erred in failing to admit certain evidence indicating that Collins and Perdue were occupying Unit 402 under false pretenses and were thus not lessees to whom the defendants owed a duty.
The defendants offered to prove at trial that Larry Collins had a criminal record that might have caused the Leavall Company to reject him as a tenant and that Larry Collins therefore persuaded his brother to apply to rent the apartment and to sign the rental agreement for him. Before trial, the plaintiffs' counsel filed a motion in limine to preclude this evidence; the trial court granted the motion, holding that the evidence was irrelevant. The trial court based its ruling onHoma-Goff Interiors, Inc. v. Cowden, 350 So.2d 1035 (Ala. 1977), wherein this Court held that, absent a restrictive clause, "the lessee generally has the right, without consent of the lessor, to assign his interest under the lease, or to sublet the premises, because the law looks with disfavor on restraints on alienation." 350 So.2d at 1037. The lease in question did not have a restrictive clause; accordingly, the trial court properly concluded that any evidence that Larry Collins's brother rented the apartment and then assigned his lease interest to Larry Collins was not relevant to the issues in this case.
There appearing no reversible error, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and INGRAM, JJ., concur.
[1] Alabama Gas Corporation is not a party to the appeals. *Page 575