665 So.2d 926 (1995)
Dr. Gerald SWEENEY and Alabama Physical Medicine Consultants, P.C.
v.
Flora Mae PURVIS, as administratrix of the Estate of Lynda Diana Segars, deceased.
1931170.
Supreme Court of Alabama.
June 9, 1995.
Rehearing Denied July 21, 1995.
*928 Richard B. Garrett and N. Wayne Simms of Rushton, Stakely, Johnston & Garrett, P.A., Montgomery, for appellants.
Timothy C. Davis of Heninger, Burge & Vargo, Birmingham, M. Dale Marsh of Cassady, Fuller & Marsh, Enterprise, for appellee.
SHORES, Justice.
This is a wrongful death/medical malpractice action in which Flora Mae Purvis, as administratrix of the estate of Lynda Diana Segars, initially sued Dr. Gerald A. Sweeney and Montgomery Rehabilitation Hospital (hereinafter "Montgomery Rehab").[1] Purvis later amended her complaint to include Dr. Sweeney's employer, Alabama Physical Medicine Consultants, P.C. Dr. Sweeney and Alabama Physical Medicine Consultants, P.C., appeal from a $500,000 judgment based on a jury verdict for the plaintiff. We affirm.
Mrs. Segars was admitted to Southeast Medical Center in Dothan, Alabama, on July 1, 1991, after having been struck by her husband, Ed. She was diagnosed as having a closed head injury, more specifically, a brain infarction, resulting from repeated physical abuse by her husband. On July 11, 1991, Mrs. Segars was transferred to Montgomery Rehab, which is a rehabilitation hospital, as opposed to an acute care facility. Patients must be medically stable in order to be admitted to Montgomery Rehab and must have received some prior therapy.
From the time of her admission on July 11 to the time of her death on July 15, Mrs. Segars was under the care of Dr. Sweeney, a licensed physician and a board-certified physiatrista physical medicine and rehabilitation specialist.[2] At the time of Mrs. Segars's admission, Dr. Sweeney saw her and noted that she had deficits with speech and daily life activities as a result of her closed head injury.
On Friday, July 12, 1991, which was Mrs. Segars's first full day of treatment and therapy at Montgomery Rehab, she attended both morning and afternoon therapy sessions; she had no complaints, although she needed some assistance with tasks, such as grooming and dressing. On Saturday, she attended both therapy sessions again, but, at 2:30 p.m., she complained of a cramp-like pain in her left leg. The staff administered an analgesic, but it did not relieve her pain. At 5:00 p.m., she again complained of pain, which she said was then in her lower left heel. Dr. Sweeney was notified by telephone by the nursing staff, and he ordered that a "K-pad," or a special heating pad, be applied to Mrs. Segars's left leg.
Mrs. Segars experienced little, if any, pain during that evening, but on Sunday her left leg appeared swollen. She remained in bed, refused pain medication, and experienced pain in her leg when she tried getting up to go to the bathroom. The day shift licensed practical nurse, Aileen Garrett, noted a positive result from Mrs. Segars's "Homans' sign," which is the result of a manual test whereby the patient's leg, while the patient is lying flat on the bed, is flexed toward her body to see if she experiences any pain and thus could possibly be experiencing a blood clot.[3]
The parties dispute what occurred next. Bonita Cook, the registered nurse on duty Sunday, testified that when she administered the Homans' sign test following Nurse Garrett's notification, the result was also positive, *929 and, therefore, that her supervisor, head registered nurse Linda Flemming Bell[4] was contacted. According to Nurse Cook, Nurse Bell stated that she would contact Dr. Sweeney. However, Nurse Bell said she does not remember Nurse Cook telling her about Mrs. Segars's condition and does not remember contacting Dr. Sweeney about it. Dr. Sweeney said he does not remember being contacted at all on the Sunday in question and stated that the contact he recalled was on Saturday, concerning the left leg cramp. Nurse Cook allegedly confirmed later that Dr. Sweeney had been contacted, but whether this contact took place on Saturday or Sunday is not clear. Nurse Bell testified that, routinely, if a doctor is notified about a patient, then that fact is documented in a patient's records. Finally, Nurse Cook also stated that she did not notify the oncoming shift nurse of Mrs. Segars's positive Homans' sign and pain complaints, as was normal procedure, because she was informed that Dr. Sweeney had been contacted. Nurse Bell testified that Nurse Cook could have contacted Dr. Sweeney directly, but did not do so. Neither the nurse's notes, the doctor's orders, nor the interdisciplinary progress notes indicate that Dr. Sweeney was notified about a positive Homans' sign.
On Monday, Karen Dean, a certified family nurse practitioner, was asked to examine Mrs. Segars. After learning of Mrs. Segars's weekend complaints of left leg soreness, Dean and the registered nurse on duty, Laurie Wilson, examined her. They determined that the Homans' test sign was negative, that there was no apparent swelling in her left leg from blood clots, but that her left calf was slightly larger. They were concerned about getting Mrs. Segars up for therapy because such movement could cause a blood clot to break off and move to the lung.
At approximately 9:00 a.m. on Monday morning, Dr. Sweeney was informed by telephone of Mrs. Segars's condition, but he ordered the nurses to go ahead and get her up for morning therapy. Although he was on call that weekend, Dr. Sweeney had not seen Mrs. Segars on either Saturday or Sunday and he did not see her before her death on Monday. While he said he does not recall where he was, he admits that it is possible that he was at his lake home on Lake Martin, some 40 miles away. Hospital policies require the physician on call to be in the immediate vicinity of the hospital.
At 12:20 p.m., while eating lunch in the dayroom after therapy, Mrs. Segars became unresponsive; she was shaking, appeared blue, and had "pinpoint" pupils. When paramedics arrived, she had stopped breathing and had no pulse. She was transported to Jackson Hospital, and she died shortly thereafter.
According to an autopsy performed on July 16, 1991, by Dr. James R. Lauridson, the state medical examiner, the manner of death was homicide,[5] but he stated the following opinion:
"It is my opinion that Lynda Diane [sic] Segars, a 42-year-old white female, died as a result of pulmonary emboli [the obstruction of an artery in a lung] arising from deep vein thrombophlebitis [a blood clot]. Deep vein thrombophlebitis is related to incapacitation arising from a brain stem infarction associated with traumatic occlusion of the left vertebral artery."
Plaintiff's Exhibit No. 3; see 3 J.E. Schmidt, M.D., Attorney's Dictionary of Medicine and Word Finder, P-378 (1990).
The case was tried, and the jury awarded $500,000 in wrongful death damages. Dr. Sweeney and Alabama Physical Medicine Consultants, P.C., moved for a new trial; the court denied their motion, and they appealed.
The first issue is whether the trial court erred in admitting Plaintiff's Exhibit No. 12, a photograph of the decedent, Mrs. Segars, with her daughter, Gina Griffin, taken during Griffin's 16th birthday party in Mrs. Segars's Montgomery Rehab room two days before her death. The defendants argue that it was not relevant and was more prejudicial than *930 probative. We hold that the trial court did not abuse its discretion in admitting the photograph.
The defendants contend that showing the jury the photograph during Griffin's testimony was intended solely toand didprovoke Griffin's emotions,[6] and that it did not tend to prove negligence or that negligence caused Mrs. Segars's death. The defendants also argue that the photograph had no probative value because it depicts Mrs. Segars only from the waist up, in a wheelchair, and does not show her left leg, the area of her body where the blood clot formed. They argue that the photograph presents no evidence that Dr. Sweeney proximately caused Mrs. Segars's death.
Purvis contends that the photograph was properly admitted because Mrs. Segars's cause of death was an issue at trial. Purvis basically states that the issue does not involve how Mrs. Segars got to the hospital but what caused her to die once she was at Montgomery Rehab, and she contends that the photograph is relevant and probative for that purpose.
As both sides concede, the trial court has great discretion in determining whether evidence, even evidence of minor probative value is relevant and whether it should be admitted or excluded. E.g., Ryan v. Acuff, 435 So.2d 1244, 1247 (Ala.1983); Harper v. Baptist Medical Center-Princeton, 341 So.2d 133, 135 (Ala.1976); C. Gamble, McElroy's Alabama Evidence § 21.01(6), § 207.01(4) (4th ed. 1991); see Smith v. Brownfield, 553 So.2d 573, 577 (Ala.1989); AmSouth Bank, N.A. v. Spigener, 505 So.2d 1030, 1041 (Ala.1986). Furthermore, according to Maffett v. Roberts, 388 So.2d 972, 976 (Ala.1980):
"A photograph is relevant and admissible in order to explain and apply the evidence when it helps the jury to better understand the persons, objects, locale or conditions which are in issue. However, the application of this evidentiary rule is within the sound discretion of the trial court, both as to the photograph's initial identification and reliability and to its probative or prejudicial qualities. This discretion is not reviewable in the absence of a gross abuse of that discretion. Moon v. Nolen, 294 Ala. 454, 318 So.2d 690 (1975)."
(Emphasis added.) E.g., Williston v. Ard, 611 So.2d 274, 279 (Ala.1992); Olympia Spa v. Johnson, 547 So.2d 80, 83 (Ala.1989); see also C. Gamble, McElroy's Alabama Evidence § 123.03(2) (4th ed. 1991).
In most wrongful death actions, when a photograph pertains to a disputed, material issue, further explains some relevant fact, or tends to bolster or disprove some other evidence, it is admitted; typically, the photograph is relevant to show the extent of the decedent's injuries. C. Gamble, McElroy's Alabama Evidence § 123.03(1), § 207.01(4) (4th ed. 1991). In addition, "[w]henever a material issue in the case is the state of the plaintiff's health at a particular time, a photograph of him at that time is admissible." Id.
Purvis contends that the photograph is admissible "because it shows the condition of Mrs. Segars around lunch on Saturday [two days before her death]." (R.T. 726.) The defendants assert that, according to Kurn v. Counts, 247 Ala. 129, 22 So.2d 725 (1945), the photograph is not admissible for the reason Purvis gives; however, contrary to the defendants' contentions, Kurn is distinguishable.
In Kurn, the Court held that a widow's testimony as to the decedent's age, health, and lack of physical defects before death was inadmissible in that wrongful death case to prove, among other theories, that the railroad accident had caused her husband's death. 247 Ala. at 133-34, 22 So.2d at 728-29. Because both parties had stipulated that her husband had died from injuries suffered in the accident, that evidence was not material to any issue being litigated and was obviously "offered for some other purpose." 247 Ala. at 134, 22 So.2d at 729. Accordingly, the defendants argue that, because the parties here agree that Mrs. Segars was medically stable when she was admitted to Montgomery Rehab, and because it is undisputed that the autopsy concluded that Mrs. Segars died as a result of a blood clot, then, according *931 to Kurn, the photograph is not admissible to show the condition of the decedent's health two days before her death because it is not relevant to any litigated issue.
However, in City of Bessemer v. Clowdus, 261 Ala. 388, 74 So.2d 259 (1954), another wrongful death case, this Court allowed evidence of the decedent's age, health, and lack of physical defects to be admitted, to assist the jury with determining, among other things, the "cause of the decedent's fall into the ditch." 261 Ala. at 395, 74 So.2d at 264. In Kurn, the cause of the decedent's death was not an issue; in Clowdus, the cause of death was an issue.
In this case, although the parties agree that Mrs. Segars was medically stable when she was admitted to Montgomery Rehab, throughout the trial Purvis argued that Dr. Sweeney's failure to diagnose the blood clot caused her death, but the defendants contended that Mrs. Segars's repeated abuse by her husband caused her death; therefore, the issues of the cause of death and who was responsible for it were material. The conflict regarding these issues is evident from Purvis's attempts to keep any mention of the domestic abuse from the jury and the defendants' attempts to submit all evidence of the abuse to the jury, which was ultimately what occurred.[7] Because the photograph was evidence of Mrs. Segars's condition on Saturday, July 13, 1991, two days before her death, it was relevant and had probative value in helping the jury determine the issue of whether Dr. Sweeney, Ed Segars, or both concurrently, were responsible for her death, and it was, therefore, admissible.
The second issue is whether the trial court erred in refusing to give the defendants' requested jury charge number 7, which related to the plaintiff's burden of proof in a medical liability action. The defendants' requested charge 7 read as follows:
"I charge you that in order for the Plaintiff to recover in this case, there must be something more than a mere possibility something more than one possibility among others, that the negligence or malpractice complained of was the cause of death of Lynda Diana Segars. There must be some evidence to the effect that such negligence or malpractice probably caused her death. If the Plaintiff fails to satisfy this burden of proof, then your verdict should be for the Defendant. Orange v. Shannon, 284 Ala. 202, 224 So.2d 236 [(1969)]; Pappa v. Bonner, 268 Ala. 185, 105 So.2d 87 [(1958)]."
Purvis objected to this charge, and the judge refused to read it to the jury, handwriting the word "covered" over the defendants' written requested jury charge number 7. (Supp.R. 5.) The defendants objected.
The instruction that the judge did give on the issue of proximate cause, pursuant to Purvis's request, mirrored instruction 25.21 of Alabama Pattern Jury Instructions: Civil ("A.P.J.I."), the general charge for medical malpractice. His charge, in pertinent part, was as follows:
"[T]he plaintiff further claims that the injury suffered by the plaintiff was a proximate result of the defendant's alleged breach of the standard of care....
"... [A] breach of the standard of care is the failure to comply with the standard of care, which failure proximately causes the injury or death in question.
"The burden is upon the plaintiff to prove to you by substantial evidence the truthfulness of all of the elements of her claim before she would be entitled to recover. If you are reasonably satisfied that the plaintiff has met his burden of proof, then the plaintiff is entitled to recover. If you are not reasonably satisfied in this case of the truthfulness of each of the plaintiff's claims, then the plaintiff is not entitled to recover...."
The judge continued:
"Ladies and gentlemen, the negligence of two persons maytwo or more persons may concur and combine to proximately cause the injuries or damages sustained by the plaintiff in this case. Causes concur and combine when they join together to *932 produce a given result. If you are reasonably satisfied from the evidence in this case that the defendant was negligent and that the defendant's negligence concurred and combined with the negligence of a third person to proximately cause the injuries and damages claimed by the plaintiff in this case, that fact would not relieve the defendant from liability for his own negligence, and the plaintiff would be entitled to recover from the defendant...."
The defendants' requested jury charge number 3, which was also read to the jury, stated:
"Ladies and gentlemen, the burden of proof rests at all times upon the plaintiff to prove to your reasonable satisfaction that the defendant was guilty of negligence or medical malpractice that proximately resulted in the death of Lynda Diana Segars. And I charge you that unless the plaintiff has carried this burden, then your verdict would be for the defendant."
Then, after a bench conference, the trial judge further defined "proximate cause" as follows, based on A.P.J.I. 33.00:
"The proximate cause of an injury is that cause which in the natural and probable sequence of events and without the intervention of any new or independent cause produces the injury and without [which] it would not have occurred."
The defendants argue that the failure to give their requested instruction deprived them of having their theory presented to the jury and deprived the jury of an understanding of the relationship between breach of duty and proximate cause, specifically, that in medical malpractice cases the plaintiff's burden of proof is to show that the alleged negligence "probably caused the injury." McAfee v. Baptist Medical Ctr., 641 So.2d 265, 267 (Ala.1994); see Pappa v. Bonner, 268 Ala. 185, 188, 105 So.2d 87, 90 (1958) (citations omitted). As a result, according to the defendants, the jury may have based its decision on the "mere possibility or one possibility among others that the negligence complained of caused the injury." McAfee, 641 So.2d at 267 (citation omitted) (emphasis added). Purvis argues that because the trial judge read the general charges for a medical liability action, in addition to the defendants' requested jury charge number 3 about the plaintiff's burden of proof, the defendants' charge number 7 was duplicative.
We agree with the defendants' contention that, according to Alabama law, a party's theory of the case can be made by the pleadings, the issues, and a proper jury instruction, and that it is reversible error for the trial court to fail to give proper instructions. Volkswagen of America, Inc. v. Marinelli, 628 So.2d 378, 384 (Ala.1993). However, in reviewing a trial court's instructions, this Court must consider the charge as a whole to determine if error was committed; a defective jury instruction, when considered in its entire context, does not necessarily make the instruction erroneously misleading, confusing, or incomplete. Marinelli, 628 So.2d at 384-85; Crum v. Alabama Power Co., 542 So.2d 1226, 1228 (Ala.1989); Alabama Power Co. v. Robinson, 404 So.2d 22, 24 (Ala.1981). Furthermore, the failure to give a specific, written instruction is erroneous only if the instruction is not substantially covered in the charge. Volkswagen of America, Inc. v. Marinelli, 628 So.2d 378, 384 (Ala.1993); Williams v. Allstate Ins. Co., 591 So.2d 38, 43 (Ala.1991); Cone Builders, Inc. v. Kulesus, 585 So.2d 1284, 1290 (Ala.1991); Rule 51, A.R.Civ.P.
After reviewing the trial court's jury instruction as a whole, we conclude that it correctly embodied the substantive principle of causation. The jury was instructed on the definition of "proximate cause" and was also instructed on the elements of a medical malpractice action, the plaintiff's burden of proof in such an action, and the causal link between the breach of the standard of care and the injuries suffered. Therefore, there was no reversible error in this regard.
The third issue is whether the trial court erred in admitting two statements by Nurse Cook in her testimony. Those two statements related to (1) the plans of her supervisor, Nurse Bell, to contact Dr. Sweeney, and (2) a statement of her supervisor, Nurse Bell, that Dr. Sweeney had been contacted. The defendants argue that these two statements were hearsay. The testimony in which these statements were presented was as follows:

*933 "Q. [Plaintiff's counsel]: Did [Nurse Bell, Nurse Cook's supervisor] tell you she was going to contact the doctor [Sweeney]?
"....
"A. [Nurse Cook]: Yes, sir.
"....
"Q. [Plaintiff's counsel]: And did you confirm that he [Dr. Sweeney] had been contacted before you left that shift?
"....
"A. [Nurse Cook]: Yes, sir."
(R.T. 704-06.)
The defendants contend that both of Nurse Cook's statements are inadmissible hearsay, and, additionally, that the first statement is inadmissible because it requires the impermissible drawing of several inferences from the initial inference that Nurse Bell did call Dr. Sweeney. Bonner v. Electric Power Bd., 583 So.2d 260, 262 (Ala.1991). Purvis argues that neither statement is inadmissible hearsay because the first statement falls under either the "then existing intent" exception or the "spontaneous exclamation" exception and because the second statement is admissible on the issue of notice; and she argues that both statements, even if inadmissible by the general rules, are admissible as cumulative of other legal evidence.
A trial judge has great discretion in ruling on the admissibility of particular evidence, and the judge's ruling in that regard will not be disturbed on appeal except for an abuse of that discretion. See, e.g., Roberts v. Public Cemetery of Cullman, 569 So.2d 369, 373 (Ala.1990).
The defendants concede in their brief that the first statement falls within the "then existing intent" exception to the hearsay evidence rule; thus, the only disputed point is whether it is still inadmissible based on the "inference on an inference" theory. See C. Gamble, McElroy's Alabama Evidence § 21.01(8) (4th ed. 1991). However, the defendants failed to preserve this issue for appeal. The defendants did object to the admission of the first statement as hearsay, but they did not object to it on the basis of the "inference on an inference" theory. Because this issue is presented for the first time on appeal, it is not reviewable. See, e.g., Mobile Wrecker Owners Ass'n, Inc. v. City of Mobile, 461 So.2d 1303, 1306 (Ala. 1984). The trial court did not abuse its discretion in admitting the first statement as coming within the "then existing intent" exception.
In regard to Nurse Cook's second statement, we also find no abuse of discretion. After a thorough review of the record and particularly Nurse Cook's testimony, we conclude that this statement was admissible as coming within a notice exception to the hearsay rule, based on the authority of Avon-Avalon, Inc. v. Collins, 643 So.2d 570, 573 (Ala.1994) (quoting C. Gamble, McElroy's Alabama Evidence § 273.02 (4th ed. 1991)).
Based on the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.
MADDOX, KENNEDY, and COOK, JJ., concur.
HOUSTON, J., concurs specially.
HOUSTON, Justice (concurring specially).
The defendants' requested jury charge number 7 is a correct statement of the law.[8]Williams v. Spring Hill Memorial Hospital, 646 So.2d 1373 (Ala.1994); Bradford v. McGee, 534 So.2d 1076, 1079 (Ala.1988). It would have been reversible error for the trial court to refuse this instruction, if the law stated in this instruction had not been substantially *934 covered by the trial court's charge taken as a whole.
NOTES
[1] Before the trial, Purvis settled her claim against Montgomery Rehab for $500,000.
[2] Dr. Sweeney joined the Montgomery Rehab staff in July 1987; he is also the medical director of the facility.
[3] While a blood clot cannot be diagnosed based on the results of a Homans' sign test alone, a positive sign indicates that a blood clot could be present. 2 J.E. Schmidt, M.D., Attorney's Dictionary of Medicine and Word Finder, H-109 (1990).
[4] At the time of this 1991 incident, Linda Flemming Bell was known simply as Linda Flemming. (R.T. 987-88.)
[5] Before the trial of this civil action, Mrs. Segars's husband Ed was charged with misdemeanor negligent homicide.
[6] The Court took a short recess after the photograph was admitted, because Griffin became very upset upon the identification and publication of the picture.
[7] However, the certified copy of Ed Segars's criminal conviction was offered but not admitted into evidence.
[8] That requested charge reads:

"I charge you that in order for the Plaintiff to recover in this case, there must be something more than a mere possibilitysomething more than one possibility among others, that the negligence or malpractice complained of was the cause of death of Lynda Diana Segars. There must be some evidence to the effect that such negligence or malpractice probably caused her death. If the Plaintiff fails to satisfy this burden of proof, then your verdict should be for the Defendant."
(Emphasis added.) (Citations omitted.)