On July 14, 1994, Michael Anthony Harper was injured when he tried to reposition an outside air conditioning unit located on the house he rented from Osmund A. Coleman. Harper sued Coleman, alleging that Coleman had negligently or wantonly installed, or had negligently or wantonly had someone else install an air conditioning unit in the home Harper leased from Coleman and that Harper was injured as a result. The trial court entered a summary judgment for Coleman, holding that as a lessor Coleman was not liable for injuries caused by latent defects that were not known to him at the time he leased the home to Harper. The Court of Civil Appeals, in a three-to-one decision, with Judge Crawley dissenting and Judge Thigpen recused, reversed and remanded, writing as follows: *Page 394 
 "Coleman testified in his deposition that he was not sure who had installed the air conditioning unit, but that he believed that he had allowed a tenant to install it in exchange for a rental payment. There is no evidence in the record indicating that this tenant was a licensed electrician or that this tenant had any electrical training. There is also no evidence showing that Coleman ever inspected the unit himself or had anyone else inspect it. . . .
 "If the tenant who installed the unit was not an electrician or was not otherwise qualified to install an electrical appliance, then Coleman knew or had reason to know that the unit had likely been improperly installed and that, as a result, there was a risk that the unit might cause injury to future tenants. In moving for a summary judgment, Coleman faced the initial burden of making a prima facie showing that there was no genuine issue of material fact and that he was entitled to judgment as a matter of law. Coleman failed to make a prima facie showing that he did not have reason to know of the defects. Thus, whether Coleman had reason to know of the defects is a disputed issue of material fact, and the summary judgment was inappropriate.
 "In holding that Coleman could be liable for Harper's injuries, we are not deviating from those cases holding that lessors are not liable for latent defects that are unknown to them at the time of the leasing. However, this case is distinguishable. For instance, in this case, there is no evidence that the air conditioner was installed by a person qualified to install electrical appliances. . . . In addition, this case is distinguishable from those holding the lessor not liable where the defects were not latent, because Coleman's own expert admits that the defects in the unit are latent. . . .
 "In reaching our decision, we are mindful that if we held otherwise we would be sending lessors a message that is undesirable as a matter of public policy. We cannot allow lessors to permit untrained persons to install potentially dangerous electrical appliances and then to insulate these lessors from liability under the guise that they did not know of any specific defect. Let it be clear, however, that, in keeping with established law, our holding does not expand the liability of lessors to include liability for defects caused by trained electricians, unless the lessor's liability is otherwise proven under agency or respondeat superior theories."
Harper v. Coleman, 705 So.2d 388, 391 (Ala.Civ.App. 1996). (Citations omitted.) Coleman petitioned for certiorari review, which we granted.
On a motion for summary judgment, the movant has the burden to make a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P.; Willingham v. UnitedInsurance Co. of America, 642 So.2d 428 (Ala. 1994). The burden then shifts to the nonmovant to present substantial evidence creating a fact question. Ala. Code 1975, § 12-21-12. "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989).
On June 2, 1994, Harper and his wife, Theresa Renee Harper, rented a house in Greensboro, Alabama, from Osmund A. Coleman. Mrs. Harper handled the rental negotiations, but she never discussed with anyone Coleman's responsibility for the air conditioning unit, and Coleman did not obligate himself to make repairs to the appliances and the air conditioner in the house — he did not reserve the right to inspect or maintain the air conditioner, nor did he undertake, or promise, to repair the unit. There was no written lease. The Harpers moved into the house between June 4, 1994, and June 10, 1994. On July 14, 1994, one of the Harpers' daughters turned off an air conditioning unit in one of the bedrooms because, she said, it "smelled funny and wasn't keeping the room cool." Mrs. Harper later turned the unit on, but she immediately turned the unit off when it blew only hot air. When Harper came home from work that evening, Mrs. Harper told him that the plumbing in the bathroom *Page 395 
was leaking,[1] but no one told him about any problem with the air conditioning unit. When Harper went out to the utility shed to get tools to fix the latest plumbing problems, he noticed that one of the two brackets that secured the air conditioning unit to the house was loose. He was afraid that the unit might fall, so he tried to place it back on the bracket. When he touched the bracket, he suffered electrical shock and was injured. Before that day, the air conditioning unit had worked properly. Coleman had never been notified by the Harpers that the air conditioner was not working properly — he was never given any notice of any defect with the unit. The first time Coleman knew that there was a problem with the air conditioning unit was after Harper had been injured.
Harper's experts testified that the air conditioner had been improperly installed, specifically stating that the installation of the unit violated the standards of the National Electric Code, and that this improper installation caused the wiring of the unit to malfunction, with the malfunctioning ultimately causing Harper's injury. These experts also testified that the defect would not be apparent to someone who merely approached the unit from outside, but would have been apparent to the person or persons who installed or repaired the air conditioner or the air conditioning hook-up.
Coleman's expert testified that two defects existed inside the unit and that, although the wiring in the house was not up to national code standards, if the house had been properly wired the circuit breaker would not have tripped and the hazardous condition would still have existed. He further testified that these defects were latent and would not have been known by Coleman.
In Casey v. Estes, 657 So.2d 845, 848 (Ala. 1995), this Court reiterated the general rule, as follows:
 "[I]n the absence of a covenant to repair the defect that caused the injury, a lessor is liable only for injuries resulting from latent defects known to the lessor at the time of the leasing and which the lessor concealed from the lessee. A landlord has no duty to inspect for latent defects, i.e., defects that are hidden or concealed, or which can not be discovered by a reasonable inspection.
". . . .
 ". . . [A]lthough a landlord is under no duty to inspect for and repair latent defects, a landlord who voluntarily undertakes such a duty is liable for injuries proximately caused by the landlord's negligence in inspecting and repairing. . . . Moreover, the exception to the general rule of no duty applies only to repairs made after the relationship of landlord and tenant begins."
(Citations omitted.)
Restatement (Second) of Torts, § 358 (1965), states the general rule as follows:
"Undisclosed Dangerous Conditions Known to Lessor
 "(1) A lessor of land who conceals or fails to disclose to his lessee any condition, whether natural or artificial, which involves unreasonable risk of physical harm to persons on the land, is subject to liability to the lessee and others upon the land with the consent of the lessee or his sublessee for physical harm caused by the condition after the lessee has taken possession, if
 "(a) the lessee does not know or have reason to know of the condition or the risk involved, and
 "(b) the lessor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk."
See Avon-Avalon, Inc. v. Collins, 643 So.2d 570, 574 (Ala. 1994); Dunson v. Friedlander Realty, 369 So.2d 792 (Ala. 1979). "Under the law, a landlord is not an insurer of the safety of the premises." Dunson v. Friedlander, at 795.
The air conditioner was installed before the Harpers and Coleman entered into *Page 396 
the lease agreement; Coleman did not inspect the air conditioning unit before leasing the premises to the Harpers, nor after he had leased the house to them; the Harpers had no discussions with Coleman about the air conditioner, either before leasing the premises or afterwards; Coleman did not reserve the right to inspect or maintain the air conditioner; the air conditioning unit had worked properly until the day of the accident; and when the Harpers learned of the problem with the unit, they did not notify Coleman — Coleman became aware of the problem only after Harper was injured. Furthermore, in this case, the defect was latent because it was hidden or concealed or because it could not have been discovered by a reasonable inspection. All the expert witnesses testified that the defective wiring was not visibly apparent.
Based on the foregoing, we hold that Coleman made a prima facie showing that no genuine issue of material fact existed; therefore, the burden shifted to Harper to present substantial evidence creating a genuine issue of material fact. This he failed to do.
We note that in spite of well-established law applicable to cases involving landlord liability for injuries to a tenant, the Court of Civil Appeals held that Coleman had failed to make a prima facie showing that he did not have reason to know of the defects and, thus, that there was an issue of material fact. The Court of Civil Appeals based that holding on its finding that Coleman should have known that the wiring of the air conditioner was defective because the air conditioner had been installed by someone other than a licensed electrician, i.e., someone Coleman might have supposed was not qualified to install an air conditioning unit. That is, if Coleman allowed installation by someone not qualified to install the air conditioner, then Coleman knew or had reason to know that it was likely that the unit had been improperly installed and that, as a result, there was a risk that the unit might cause injury to future tenants.
However, there was no evidence presented to indicate that the air conditioner was not installed by an electrician or by someone otherwise qualified; rather, Coleman merely testified that he could not remember whether the units in the house had been replaced by a former tenant for whom he had reduced the rent, but that he thought he probably had replaced the units, because they were so old:
 "[Harper's attorney]: Did you ever buy an air conditioner for [the house Harper rents]?
 "[Coleman]: I may have. I can't remember. You know, I don't remember. I . . . for the length of time . . . those were old air conditioners when I bought the house, and probably . . . it seems like some tenant or somewhere, we had some kind of agreement; either they put an air conditioner in or we took something off the rent. I don't remember. But being that old, I would think they'd probably been replaced."
The fact that Coleman did not definitively testify that the air conditioning unit had been installed by a licensed electrician does not support Harper's bare allegation that the unit was installed by a "nonelectrician"; and that bare allegation was insufficient to rebut Coleman's prima facie showing that he did not know or have reason to know of the defects in the air conditioning unit. That bare allegation did not create a genuine issue of material fact.
We also note the Court of Civil Appeals' attempts to distinguish this case from those cases holding that lessors are not liable for latent defects that are unknown to them at the time of the leasing; the Court of Civil Appeals distinguished it on the basis that in the other cases there was no allegation as to the qualifications of the installers. This is a faulty premise on which to hold a landlord liable for injuries resulting from a latent defect, and a premise that we cannot let stand.
We further note that it appears that the Court of Civil Appeals reached its conclusion in this case by basing an inference on an inference. The first inference was that the unit was replaced; the second inference was that the replacement was performed by a "nonelectrician," either a tenant or some other unqualified person. Dean Gamble has suggested that Rule 401, Ala.R.Evid., effective *Page 397 
January 1, 1996, may permit a reasonable inference to be drawn from another reasonable inference, see, C. Gamble,McElroy's Alabama Evidence, § 21.01(8) (5th ed. 1996); however, in this case, the second inference the Court of Civil Appeals made cannot be reasonably drawn from the first inference. In reaching its conclusion, that court created a duty to inspect where otherwise no such duty would have existed.
In addition, although the Court of Civil Appeals stated that it declined to adopt what it called the equivalent of an implied warranty of habitability in the landlord-tenant context, stating that it agreed with this Court that the adoption of new laws is a function for the Legislature, see,Murphy v. Hendrix, 500 So.2d 8 (Ala. 1986); Osborn v. Brown,361 So.2d 82 (Ala. 1978), by holding as it did, the Court of Civil Appeals did exactly what it professed not to do.
For the foregoing reasons, we reverse the judgment of the Court of Civil Appeals and remand the case for an order or further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, SHORES, KENNEDY, BUTTS, and SEE, JJ., concur.
ALMON and COOK, JJ., concur in the result.
[1] The Harpers had had plumbing problems with a commode in the house; Mr. Harper had tried to fix it himself, but he did not have the proper equipment. Coleman was notified of this problem and had sent a plumber out to correct the problem.