CRAWLEY, Judge.
Barbara Findley sued Alabama Power Company (“APCo”), stating that on July 16, 1995, she was injured when her automobile collided with a utility pole maintained and controlled by APCo. Findley alleged that APCo was guilty of negligence because, she said, APCo “located the said utility pole in close and dangerous proximity to the traveled portion of a public highway and ... the utility pole was in the right-of-way of said highway and rendered the highway dangerous for use by [Find-ley] and by other members of the traveling public.” Findley further alleged that APCo was guilty of wanton misconduct because, she said, it had been “warned prior to the date of the accident that [its] pole location was a hazard to the traveling public” and yet “failed and refused to move the said pole until after this accident.”
APCo answered, denying the allegations and alleging contributory negligence on the part of Findley. Thereafter, *1209 APCo filed a summary judgment motion, supported by a narrative summary of undisputed facts, a brief, and certain documentation. Findley filed a response in opposition to the summary judgment motion, along with a brief and documentation in support of her position. After a hearing, the trial court entered a summary judgment in favor of APCo. Findley appeals. This case was transferred to this court by the Supreme Court, pursuant to Ala.Code 1975, § 12-2-7(6).
“A motion for summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law.” Rule 56(c)(3), Ala. R. Civ. P. See West v. Founders Life Assurance Co. of Florida, 547 So.2d 870 (Ala.1989), and Bass v. SouthTrust Bank, 538 So.2d 794 (Ala.1989), for a discussion of the applicability of the substantial evidence rule.
In Birmingham Electric Co. v. Lawson, 239 Ala. 236, 237, 194 So. 659, 661 (1940), our supreme court stated:
“[T]he only foundation for legal liability to one injured or damaged in the legitimate use of the highway in consequence of the .location or maintenance of [a utility] pole is negligence in placing or maintaining the [pole] in such close proximity to the portion of the highway set apart and devoted to public use as to be dangerous to members of the public in the legitimate use of the highway, and the negligence must be a proximate cause of the injury.”
(Emphasis added.)
At approximately 9:00 a.m. on July 16, 1995, Findley, while returning home from her job as a nurse, was involved in a one-car accident approximately two miles from her home. Findley’s automobile struck a utility pole; . Findley was injured in the accident. The majority of the damage to Findley’s automobile was to the left front of the vehicle.
Findley can recall only sketchy details of the accident. Findley testified that she remembers passing her neighbor Patty Maxwell’s house, which is located about 50 yards from the utility pole. Findley stated that the next thing she remembers after passing Maxwell’s house is seeing the utility pole directly in front of her, just seconds before the impact. Findley says that it was a sunny day and that the road was dry. Findley had worked from 7:00 p.m. on Saturday, July 15, 1995, until 7:30 a.m. or later on Sunday, July 16, 1995. At the time of the accident, Findley had been awake for approximately 24 hours. During her deposition, Findley was asked, in reference to the time of the accident, “Were you awake, asleep?” and she replied, “I was awake, I assume. I don’t know.” Rodney Findley, Findley’s husband, testified that she has told him on several occasions that she does not remember how the accident happened — that it is just a blank.
APCo submitted the affidavit of the state trooper who investigated the accident, who stated that he spoke with Find-ley as a part of his investigation of the accident and that Findley told him “that she had just gotten off work after having ‘pulled a long shift’ and that she became drowsy, fell asleep at the wheel, and left the traveled portion of the roadway, resulting in her automobile striking a utility pole.” The trooper also stated that Find-ley’s statement to him “was consistent with [his] physical examination of the roadway, which reflected that [there were] no skid marks, scrub marks or other marking indicating a braking maneuver.”
Findley testified that she does not remember talking to the trooper, and Rodney Findley testified that although the trooper came to the hospital and spoke with Findley, he does not recall what was said. Findley submitted her affidavit, in which she stated, “At no time prior to this accident did I ever become drowsy or did I feel tired and incapable of driving my vehicle to my home.”
APCo placed this utility pole in its location on Broughton Road in 1946, and since *1210 its placement there had been no accidents involving the utility pole, until Findley’s 1995 accident. The Findleys had lived on Broughton Road approximately 13 years before the accident, and they drove by the utility pole on a daily basis. Rodney Find-ley had previously been employed by APCo to map utility poles once the poles were in place. He admitted that, although he thought the utility pole was “mighty close to the road,” he did not report the situation to APCo, and he did not consider the utility pole to be a hazard until after Findley’s accident.
Broughton Road curves slightly where the utility pole was located, and a small ditch runs parallel to Broughton Road. The utility pole was located between the edge of the pavement and the ditch. William Broughton, a neighbor of the Find-leys, who lives approximately 250 yards from the utility pole, testified that he considered the utility pole to be in a dangerous spot because, he said, it was only about two to three feet from the edge of the road. Broughton further testified that on two or three occasions before Findley’s accident he had requested that APCo move the utility pole. Broughton also testified that after the accident he insisted that the utility pole be relocated to the other side of the ditch and that APCo finally complied with this request.
APCo also submitted the affidavit of George F. Brooks, its supervisor of risk services for the eastern division. Brooks stated that he had obtained measurements at the accident scene and that the distance from the edge of the pavement to the original site of the utility pole was 6 feet, 3 inches and that the distance from the edge of the pavement to the present location of the utility pole was 16 feet, 8 inches.
Findley’s expert testified that before the accident the utility pole was located on the outermost edge of the roadbed and that it was his opinion that the utility pole should not have been located in the roadbed, but should have been placed on the other side of the ditch. APCo’s expert testified that the utility pole was located on the outside edge of the shoulder of the road, between the edge of the pavement and the ditch, and that he would recommend that the utility pole be placed on the other side of the ditch (where it is currently located). APCo’s expert further testified that if the utility pole had been located on the other side of the ditch, it was “[his] best judgment that [Findley’s car] wouldn’t have hit the pole.”

The Negligence Claim

Findley contends that APCo was guilty of negligence because, she says, it located the utility pole too close to the highway, and that negligence, she says, caused her automobile accident. Findley argues that the trial court erred in entering a summary judgment in favor of APCo because, she claims, she presented sufficient evidence to submit the issues of negligence and contributory negligence to a jury. APCo contends that Findley did not present substantial evidence that it was negligent. APCo further contends that Findley failed to rebut its showing that she was contributorily negligent.
The dispositive issue is whether Findley produced substantial evidence to defeat APCo’s properly supported motion for summary judgment. Specifically, we must determine whether Findley rebutted APCo’s showing, via the affidavit of a state trooper who interviewed Findley at the scene of the accident, that Findley “became drowsy, fell asleep at the wheel, and left the travelled portion of the roadway,” and was therefore contributorily negligent.
The issue of contributory negligence turns on whether Findley continued to drive while drowsy, knowing that she might fall asleep at the wheel.
“In any ordinary case, one cannot go to sleep while driving an automobile without having relaxed the vigilance which the law requires, without having been negligent; it lies within his own control to keep awake or cease from driving; and so the mere fact of his going to *1211 sleep while driving is a proper basis for an inference of negligence sufficient to make out a prima facie case, and sufficient for a recovery, if no circumstances tending to excuse or justify his conduct are proven.... If such circumstances are claimed to have been proven, it then becomes a question of fact whether or not the driver was negligent; and in determining that issue, all the relevant circumstances are to be considered, including the fact that ordinarily sleep does not come upon one without warning of its approach.”
Kilburn v. Bush, 223 A.D.2d 110, 115, 646 N.Y.S.2d 429, 432 (N.Y.App.Div.1996) (quoting Bushnell v. Bushnell, 103 Conn. 583, 592, 131 A. 432, 435 (1925)) (emphasis added). Findley’s affidavit in opposition to APCo’s motion for summary judgment states that “[a]t no time prior to th[e] accident did [she] ever become drowsy or ... feel tired and incapable of driving.” This statement, construed most favorably to Findley, is sufficient to create a factual issue as to whether she fell asleep, because “ordinarily sleep does not come upon one without warning of its approach.” See Kil-burn v. Bush, 223 A.D.2d at 115, 646 N.Y.S.2d at 432. That evidence rebutted APCo’s showing and created a genuine issue of material fact as to whether Find-ley did, in fact, become drowsy and fall asleep at .the wheel.
The statement in Findley’s affidavit did not violate the rule that a party cannot create an issue of fact by submitting an affidavit that directly contradicts, without explanation, that party’s earlier testimony. See Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc., 611 So.2d 238, 245 (Ala.1992). See also Liles v. Flatley, 643 So.2d 947 (Ala.1994). The statement in Findley’s affidavit that, prior to the accident, she did not “become drowsy or ... feel tired and incapable of driving” does not directly contradict her earlier deposition testimony that, at the time of the accident, she “assumed she was awake” but did not know, or that she did not remember much of the accident. See Ex parte Coleman, 705 So.2d 392 (Ala.1997) (witness’s statement that he “did not remember” who installed air conditioner constituted no evidence of fact that a non-licensed electrician installed air conditioner).

Proximate Cause

APCo contends that the proximate cause of the accident was Findley’s act of driving approximately 6 to 10 feet off the traveled portion of the road, not the placement of the utility pole. Our supreme court stated the following in Marshall County v. Uptain, 409 So.2d 423, 425 (Ala.1981):
“The question of proximate case is almost always’ a question of fact to be determined by the jury. The question must go to the jury if reasonable inferences from the evidence support the theory of the complaint. The question of whether [the defendant’s] alleged negligence was the proximate cause of [the plaintiffs] injuries was a question of fact and [was] properly submitted to the jury.”
(Citations omitted.)
It was inappropriate for the trial court to enter a summary judgment on the negligence claim in favor of APCo because Findley presented substantial evidence to create a genuine issue of material fact and because the issue of proximate cause of Findley’s injuries was a question of fact to be determined by a jury.

The Wantonness Claim

Findley contends that APCo was guilty of wanton misconduct because, she says, it had been advised that the location of the utility pole was dangerous before the date of the accident and yet failed to move the pole. Findley argues that APCo had been warned on three different occasions that the pole posed a hazard to motorists. All three “warnings,” however, came from William H. Broughton, a property owner who lived within 250 yards of the pole. Broughton testified that he asked APCo “on two or three occasions to move the *1212 pole” because he “felt like it was dangerous.”
In Griffin Lumber Co. v. Harper, 247 Ala. 616, 618, 25 So.2d 505, 506 (1946), our supreme court explained:
“Before a party can be said to be guilty of wanton conduct it must be shown that with reckless indifference to the consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injury.”
In Gilbert v. Southern Bell Telephone & Telegraph Co., 200 Ala. 3, 75 So. 315 (1917), the plaintiff was injured when his vehicle struck a telephone pole located four feet from the outside edge of the road. Our supreme court held that the trial court had correctly submitted the plaintiffs negligence claim to the jury, but had erred by failing to direct a verdict for the defendant on the wantonness claim. The court stated:
“The pole had long stood where it was on the margin of a much-traveled road. At best for plaintiff it stood only so near the graveled part of the road that the hubs of passing vehicles had left some marks or scratches on it. There was no evidence that anyone else had ever been hurt there. A finding that defendant had wantonly, willfully, or intentionally caused the damage of which plaintiff complained would have had no support in the rational inferences afforded by the evidence.”
200 Ala. at 4, 75 So. at 316. Findley, likewise, did not present substantial evidence of APCo’s wantonness. Requests by Mr. Broughton that APCo move its pole because Broughton “felt like [the pole] was dangerous” constitute a mere lay opinion of dangerousness and do not establish that the location of the pole was a hazard. The “marks and scratches” on the pole in Gilbert, which had been left by “the hubs of passing.vehicles,” constituted much more evidence of the pole’s potentially hazardous location, yet the Gilbert court held that, without proof that “anyone else had ever been hurt there,” there was not sufficient evidence of wantonness to submit the issue to a jury. Consequently, we affirm the summary judgment as to the wantonness claim.
The judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and YATES and MONROE, JJ., concur.
THOMPSON, J., dissents.